915 A.2d 1069

YILMAZ, INC., PLAINTIFF–APPELLANT, v.
DIRECTOR, DIVISION OF TAXATION,
DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 8, 2006—Decided February 2, 2007.

Before Judges AXELRAD, R.B. COLEMAN and GILROY.

*Todd W. Heck* argued the cause for appellant (*Basile & Testa,* attorneys; *Mr. Heck,* on the brief).

*Michael J. Duffy,* Deputy Attorney General, argued the cause for respondent (*Stuart Rabner,* Attorney General, attorney; *Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Mr. Duffy,* on the brief).

The opinion of the court was delivered by

AXELRAD, J.T.C. (temporarily assigned).

This case presents the novel issue of the standard of proof necessary to overcome the presumed correctness of the Director, Division of Taxation's ("Director's") state tax assessments based on an audit of a cash business, involving only factual issues and the methods employed by the Director. In a reported opinion, the Tax Court judge applied the standard utilized in local property tax cases, *Pantasote Co. v. City of Passaic,* 100 *N.J.* 408, 413, 495 *A.*2d 1308 (1985), i.e., cogent evidence that is "definite, positive and certain in quality and quantity to overcome the presumption" of correctness of the assessment. *Yilmaz, Inc., v. Dir., Div. of Taxation,* 22 *N.J. Tax* 204, 236 (Tax 2005). We affirm.

The following facts were adduced during the three-day trial before Judge Menyuk. Plaintiff Yilmaz, Inc. operated a restaurant and bar known as the Bridgewater Pub. In March 1999, the Division commenced an audit of plaintiff's business. Plaintiff had virtually no record of its receipts for the 1995 through 1998 audit period as required by statute from which to verify the gross receipts reported on its tax returns; it did not retain cash register receipts, did not use guest checks and did not maintain summary records of sales.[1] Accordingly, the Director's auditor used an indirect "markup" procedure to reconstruct the income and receipts of plaintiff's cash business and determine the sales tax assessment and deficiency and resulting increases in the corporate business tax (CBT) and gross income tax (GIT) withholding assessments. Under this methodology, the auditor selects a test period, which in this case was the calendar year 1997. The auditor then compared the cost of goods sold by plaintiff for that period, as developed from invoices and the records of suppliers, to the menu prices, developing a ratio of selling price to cost, or "markup." The auditor then applied that ratio to the cost of purchases for each year covered by the audit to arrive at an estimate of gross receipts subject to sales tax for the audit period.[2]

Using the gross sales determined from his markup analysis, the auditor computed a sales tax deficiency and recomputed plaintiff's CBT for 1995, 1996 and 1997 and computed the tax for 1998 because no return had been filed for that year, and made assessments for all of the audit years. He also made an assessment of

---

[1] See N.J.S.A. 54:32B–16 (requiring records of sales to be retained for examination and inspection by the Division for a three-year period from the filing of the return, or longer if required by the Director); N.J.A.C. 18:24–2.3(a) (requiring the retention of cash register tapes for three years, amended effective June 1, 1998 to require a four-year retention period, 30 N.J.R. 2070(b) (June 1, 1998)); N.J.A.C. 18:24–2.4(a), (b) (permitting cash register tapes to be discarded after a certain period where summary records of sales are maintained; the summary records must be retained for four years).

[2] In developing his markup ratio, the auditor reduced plaintiff's audited gross receipts by various allowances for discounts, giveaways and specials.

additional GIT (withholding) based on his calculation of adjusted employee wages and estimated salary attributed to Mr. Yilmaz in the absence of any documentation or evidence presented by plaintiff to support the information reported on the returns. On August 21, 2001, the Director issued a notice of assessment related to the final audit determination.

Following a protest and conference hearing, the overall markup ratio was reduced slightly and the tax assessments were reduced. Plaintiff appealed to the Tax Court, contending the Director utilized unreasonable and arbitrary assumptions in the markup analysis and failed to account for inventories it maintained. The Director contended plaintiff's records were wholly deficient, and the State auditor's assumptions were reasonable in light of the inadequacy of records or other evidence to support plaintiff's claims. Judge Menyuk affirmed the Director's final determination, assessing deficiencies of sales tax, *N.J.S.A.* 54:32B-1 to –29, and corporate business tax, *N.J.S.A.* 54:10A–1 to –41, for the January 1, 1995 through December 31, 1998 audit period; and gross income tax (withholding), *N.J.S.A.* 54A:7–1 to –7, for the January 1, 1996 through December 31, 1998 audit period. On August 11, 2005, the court entered an order for judgment against plaintiff in the amount of $129,531.78.

On appeal, plaintiff argues the Tax Court erred in: (1) establishing as the burden of proof that it had to present "cogent evidence that must be 'definite, positive and certain' " in order to overcome the presumption of correctness attaching to the assessments; (2) excluding evidence regarding the markup factor used in an audit conducted subsequent to the one at issue; (3) rejecting the testimony of its accountant as not credible; and (4) failing to recognize alleged inherent flaws and wholly arbitrary assumptions in the State auditor's markup methodology and calculations. We are not persuaded by any of these arguments and affirm substantially for the reasons articulated by Judge Menyuk in her cogent and comprehensive written opinion. We add the following com-

ments regarding the court's adoption of the *Pantasote* standard to state tax assessments.

As appropriately defined by the court, the principal issue at trial was the "reasonableness of the methods employed by the Director for an audit period where the plaintiff had virtually no records of its receipts." *Yilmaz, supra,* 22 *N.J. Tax* at 230. The Tax Court began its analysis with the well settled principle that the Director's assessments of tax are presumed to be correct and the plaintiff has the burden of overcoming the presumption. *Id.* at 231 (citing *Atlantic City Transp. Co. v. Dir., Div. of Taxation,* 12 *N.J.* 130, 146, 95 *A.*2d 895 (1953) (other citations omitted)). The cases have recognized that the "naked assertions" of the taxpayer, without supporting records or documentation, are insufficient to rebut the Director's presumption. *See ibid.; TAS Lakewood, Inc. v. Dir., Div. of Taxation,* 19 *N.J. Tax* 131, 140 (Tax 2000); *Ridolfi v. Dir., Div. of Taxation,* 1 *N.J. Tax* 198, 202–03 (Tax 1980). The court noted, however, that the extent of the burden of proof placed on the taxpayer to overcome the presumption was ill-defined, and the case law needed a specific, workable standard.

Judge Menyuk articulated a logical and viable standard, supported by case law and consistent with the state tax reporting and recordkeeping statutes, which we expressly endorse. Taking guidance from our Supreme Court's reference to local property tax case law in *Atlantic City Transportation Company, supra,* the Tax Court adopted the standard applied in local property taxation, as it was a "reasonable and practical one." *Yilmaz, supra,* 22 *N.J. Tax* at 236. The Tax Court held that when a taxpayer challenges an assessment by the Director based on an audit of a cash business, involving only factual issues and the methods employed by the Director, the taxpayer can rebut the presumption that the assessment is correct only by cogent evidence that is "definite, positive and certain in quality and quantity to overcome the presumption." *Pantasote, supra,* 100 *N.J.* at 413, 495 *A.*2d 1308 (quoting *Aetna Life Ins. Co. v. City of Newark,* 10 *N.J.* 99, 105, 89 *A.*2d 385 (1952)).

In the absence of evidence that the amount of the assessment is "far wide of the mark," the taxpayer cannot overcome the presumption simply by attacking the Director's methodology. *Id.* at 414–15, 495 A.2d 1308. As the court noted, the Director is given broad authority to determine the tax from any available information and, if necessary, to estimate the tax from external indices. *See N.J.S.A.* 54:32B–19; *Ridolfi, supra,* 1 *N.J. Tax* at 203. The court appropriately rejected plaintiff's suggestion that the onus should be on the Director to establish that it used "the most reasonable means available" or "the best possible method" to estimate the taxpayer's receipts. The court reasoned that it would be contrary to the purpose of the recordkeeping statute to place such a high burden and expense on the Director when it was plaintiff's own failure to maintain proper records that "forced the Director to resort to the markup method in the first place." *Yilmaz, supra,* 22 *N.J. Tax* at 235–36. Looking to another local property tax case, which provided for a limited hearing where a taxpayer failed to comply with a statute that required it to provide financial information to a taxing district, the Tax Court elaborated upon the extent of evidence required to satisfy the burden of proof:

> [The taxpayer's] evidence must focus on the reasonableness of the underlying data used by the Director and the reasonableness of the methodology used. An "aberrant" methodology will overcome the presumption of correctness. An imperfect methodology will not.
>
> [*Yilmaz, supra,* 22 *N.J. Tax* at 236 (citing *Ocean Pines, Ltd. v. Borough of Point Pleasant,* 112 *N.J.* 1, 11–12, 547 A.2d 691 (1988)).]

Contrary to plaintiff's assertion, utilization of the *Pantasote* standard is not a wholesale change of the burden of proof. The burden has always been on the taxpayer to rebut the presumed correctness of the Director's assessment by competent evidence. Now there is a viable articulated standard as to the type of evidence required to be produced by the taxpayer. It is logical and consistent with case law and the purpose of the recordkeeping statute to hold a taxpayer who does not maintain business records

as required by law to a higher standard, particularly for assessment of a "trust fund tax." [3]

Plaintiff argues the Tax Court's decision places it in a "Catch-22" position in that, without adequate records, it can never overcome the *Pantasote* presumption. We disagree. There is nothing to prevent a taxpayer from producing competent independent evidence, expert or otherwise, to challenge that presented by the Director and demonstrate that the Director's methodology was aberrant or the amount of the assessment was far wide of the mark. Moreover, a taxpayer can produce evidence through cross-examination of the auditor that is sufficient to overcome the presumed correctness of the Director's assessment and to establish that the sales tax assessment should be reduced. *Charley O's, Inc., t/a Scotty's Steakhouse v. Director, Division of Taxation*, 23 *N.J. Tax* 171, 172 (Tax 2006). Citing *Yilmaz, supra*, 22 *N.J. Tax* at 236, the Tax Court found the Director's methodology to be "aberrant and not merely imperfect." *Charley O's, supra*, 23 *N.J. Tax* at 186. Recognizing the Director had the authority to use the markup method, the court found he did not have the authority to adopt the gross receipts reported on the taxpayer's CBT returns over the gross receipts reported on the sales tax returns "merely because it was more convenient to do so or because the use of the gross receipts reported on the CBT return produced a larger sales tax liability." *Ibid.* Additionally, and most critical to the court's determination, was that the auditor was directed to stop his markup analysis before it was complete and to arbitrarily increase the taxpayer's purchases which, when multiplied by the markup ratio, would equal the gross receipts reported on the CBT returns. *Ibid.* In fact, the court noted that had the auditor been permitted by his superior to complete his markup analysis, "it would have

---

[3] Under *N.J.S.A.* 54:32B–12(a), the vendor collects the sales tax from its customers and holds it in trust until it is reported and turned over to the State. GIT, which is required to be withheld by the employer, is also a trust fund tax. *N.J.S.A.* 54A:7–5.

been difficult to find fault" with the Director's methodology. *Id.* at 188.

In the present case, after adopting the *Pantasote* standard, Judge Menyuk made evidentiary rulings, credibility assessments, and set forth detailed factual findings. The court found the Director's documentary evidence to be more credible than plaintiff's naked assertions, concluding that plaintiff failed to meet its *Pantasote* burden. Judge Menyuk was satisfied the circumstances of the audit warranted the use of the markup method to estimate plaintiff's gross receipts and the data and methodology used by the Director were reasonable in light of what was available. The Tax Court also found the adjustments for gross receipts for CBT purposes made by the State auditor were consistent with the findings of the markup analysis.

The scope of appellate review from a Tax Court determination is the same as that applicable to a non-jury determination of any other trial court. *125 Monitor St. v. Jersey City*, 23 *N.J. Tax* 9, 13 (App.Div.2005). "As a general rule, admission or exclusion of proffered evidence is within the discretion of the trial judge whose ruling is not disturbed unless there is a clear abuse of discretion." *Dinter v. Sears, Roebuck & Co.*, 252 *N.J.Super.* 84, 92, 599 *A.*2d 528 (App.Div.1991); *see also Purdy v. Nationwide Mutual Ins. Co.*, 184 *N.J.Super.* 123, 130, 445 *A.*2d 424 (App.Div. 1982). Moreover, "'judges presiding in the Tax Court have special expertise; for that reason their findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them.'" *Alpine Country Club v. Bor. of Demarest*, 354 *N.J.Super.* 387, 390, 807 *A.*2d 257 (App.Div. 2002) (quoting *Glenpointe Assoc. v. Township of Teaneck*, 241 *N.J.Super.* 37, 46, 574 *A.*2d 459 (App.Div.), *certif. denied*, 122 *N.J.* 391, 585 *A.*2d 392 (1990)). Our scope of review "is limited to determining whether the findings of fact are supported by substantial credible evidence with due regard to the Tax Court's expertise and ability to judge credibility." *First Republic Corp. of Am. v. Borough of E. Newark*, 17 *N.J. Tax* 531, 536–37 (App.Div.

1998) (citations omitted), *certif. denied,* 157 *N.J.* 647, 725 *A.*2d 1128 (1999).

Other than plaintiff's challenge to the extension of the *Pantasote* standard to state tax assessments, its arguments on appeal are attacks on the trial court's credibility determinations and the weight of the evidence. We are not persuaded that any of the factual findings or discretionary rulings challenged by plaintiff are arbitrary or unsupported by the evidence, and thus discern no basis to disturb them. *R.* 2:11–3(e)(1)(A), (E).

Affirmed.