NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

_____
                           :

CIRIACO GATTA, MARIE      :      TAX COURT OF NEW JERSEY
GATTA, & MARIA GATTA, LLC,  :      DOCKET NO: 008649-2016
                           :

          Plaintiffs,    :

             vs.         :

DIRECTOR,                :
DIVISION OF TAXATION,     :

          Defendant.  :
_____:

Decided: December 14, 2018.

Scott E. Becker for Plaintiff.

Heather Lynn Anderson for Defendant (Gurbir S. Grewal, Attorney
General of New Jersey, attorney).

**CIMINO, J.T.C.**

The Director of the Division of Taxation filed for summary judgment as to the

taxpayer Maria Gatta, LLC's challenge to a sales tax audit determination.[1] For the

---

[1] There was also a "spin-off" audit of Ciriaco Gatta and Marie Gatta as to gross
income tax.

reasons set forth herein, the court determines that there are sufficient facts in dispute to preclude the entry of summary judgment.

The taxpayer, Maria Gatta, LLC, is an Italian-style restaurant trading as the Red Room Cafe, located in the shore-side community of Ventnor immediately south of Atlantic City. The taxpayer was audited for the final three quarters of 2009 through the first quarter of 2013. When the taxpayer failed to, or could not, provide adequate books and records, the Director resorted to what is commonly called a mark-on method, which essentially allows the Director to extrapolate sales based upon a comprehensive review of a sample period which is then applied to the entire audit period.

Typically, the sample period is within the audit period. However, it has to be remembered that on October 29, 2012, the New Jersey seashore areas, including Ventnor, suffered damage from Superstorm Sandy. As a result, the taxpayer's records were lost. The last quarter of the audit period was the first quarter of 2013. With considerable damage from the storm, it is understandable why the Director did not use the first quarter of 2013 for the sample period since it may not be fully representative of the prior audit periods.

Rather than selecting a sample period within the audit period, the Director selected the first quarter of 2014.[2] While the goal of the Director is to perform a comprehensive review for the selected sample period of both the product cost (with adjustment for inventory) as well as total sales, the taxpayer failed to provide complete purchase invoices for the first quarter of 2014. The taxpayer also did not provide sufficient information to determine the mix of menu items sold.

Undeterred, menus were obtained from the taxpayer, and the Director's auditor, using his expertise and experience, approximated the proportion which each menu item constituted towards total sales by multiplying the quantity of each menu item sold times the selling price. This approximation consisted of $56,360.17 of sales. It is unclear what period of time this approximation represents (i.e., weeks, days, hours).

For each menu item, the auditor listed the main ingredient, as well as a general listing of supplementary ingredients. The unit prices of said ingredients were determined by the taxpayer's invoices, and for ingredients that were not listed on the

---

[2] The court need not decide at this time whether the selection of the 2014 sample period was representative of sales prior to Superstorm Sandy. Specifically, it will remain for trial as to whether there were changes to the dynamics or to the community subsequent to the storm. There has not be any evidence presented as to this issue, one way or another. See Yilmaz, Inc. v. Dir., Div. of Tax'n, 22 N.J. Tax 204, 226 (Tax 2005), aff'd, 390 N.J. Super. 435, 23 N.J. Tax 261 (App. Div. 2007) (each audit period stands on its own). Compare Id. at 238 (use of invoices from period later than audit reasonable), Kramer v. Dir., Div. of Tax'n, 24 N.J. Tax 105, 109, 113-14 (Tax 2008) (use of previous audit records reasonable).

invoices because the invoices were incomplete, the auditor relied upon his expertise in determining the unit prices (i.e. price per pound) for each item. The auditor then multiplied the unit price of each ingredient by the amount each item was used in the mix of menu items as determined by the auditor. This resulted in the Director determining that it cost the taxpayer $11,323.32 for $56,360.17 of menu items served.

Dividing the $56,360.17 in sales by $11,323.32 in costs results in a mark-on ratio of 4.98. After accounting for beverages, spoilage and other loss, the mark-on was adjusted to 4.891062.[3] With the mark-on ratio, the Director was able to multiply the total product cost as reported on taxpayer's audit period tax returns (second quarter of 2009 through first quarter of 2013) by the ratio of 4.891062 to arrive at a total audited sales amount.

For the audit period in question, taxpayer reported $1,037,643 in taxable sales resulting in sales tax remitted of $72,635. The product cost for the same period according to taxpayer was $634,288.[4] Based upon the taxpayer, this would place the

---

[3] The Director's audit papers indicate spoilage and other loss to be ten percent. However, the actual calculation in the audit papers is closer to twelve percent. For purposes of consistency, the court utilized the latter amount in its calculations set forth later in the opinion.

[4] The amounts for 2009 and 2013 were temporally adjusted proportionally to reflect less than four full quarters. For example the audit period for 2009 covered three quarters. Thus, the auditor adjusted his numbers to seventy five percent of the total.

mark-on ratio at 1.64. However, the Director multiplied the total product cost of $634,288 by the mark-on ratio he determined to be 4.891062. This resulted in an audited sales amount of $3,102,342 and total sales tax liability of $217,164 at the seven percent sales tax rate. Since taxpayer only remitted $72,635 in sales tax, the Director issued a deficiency for $144,529 plus interest and penalties.

Taxpayer challenges the mark-on ratio based upon the data used for portions, product cost and selling price as well as a number of missing ingredients in the compilation of menu items compiled by the Director. However, a taxpayer cannot hope to avoid taxation by failing or refusing to provide or maintain adequate books and records. Moreover, a taxpayer cannot expect to obtain some sort of advantage by not maintaining or providing adequate books and records.

Long ago, when the Legislature adopted the Sales and Use Tax Act, it anticipated that situations would arise in which taxpayers had insufficient or incorrect records. To that end, the Legislature plainly provided "[i]f a return required by this act is not filed, or if a return when filed is incorrect or insufficient, the amount of tax due shall be determined by the director from such information as may be available. If necessary, the tax may be estimated on the basis of external indices, such as stock on hand, purchases, . . . location, scale of . . . charges, comparable . . . charges, type of . . . service, number of employees or other factors." N.J.S.A. 54:32B-19. In other words, the Director is given broad discretion in reaching the

amount of tax which is due and owing.  This information may be obtained "from the seller or from any other source."  N.J.A.C. 18:24-2.15(b).  Likewise, "[i]t is a well established principle, that where the records are deemed insufficient, 'the Director is given broad authority to determine the tax from any available information and, if necessary, to estimate the tax from external indices.'"  Coliseum Pizzeria, Inc. v. Dir., Div. of Tax'n, 24 N.J. Tax 369, 375 (Tax 2008) (quoting Yilmaz, Inc. v. Dir., Div. of Tax'n, 390 N.J. Super. 435, 441, 23 N.J. Tax 361, 366 (App. Div. 2007)).

To that end, "the Director's assessments of tax are presumed to be correct and the plaintiff has the burden of overcoming the presumption."  Yilmaz, 390 N.J. Super. at 440, 23 N.J. Tax at 366.  It has long been held that a mere naked assertion by taxpayer is insufficient to rebut the presumption.  Ridolfi v. Dir., Div. of Tax'n, 1 N.J. Tax 198, 202-03 (Tax 1980).  See also Yilmaz, 390 N.J. Super. at 440, 23 N.J. Tax at 366.

The power conferred by the Legislature upon the Director in setting the amount of tax due is not absolute.  As has been oft-stated, the government in dealing with the taxpaying public, must turn square corners.  F.M.C. Stores, Co. v. Borough of Morris Plains, 100 N.J. 418, 426 (1985).  In the context of sales tax audits, such as the one before the court, this means that "the absence of adequate tax records does not give the [Director] carte blanche to impose Draconian absolutes."  Duncan Truck Stop, Inc. v. Dir., Div. of Tax'n, 4 N.J. Tax 367, 377 (Tax 1982).  While the court

recognizes the possible frustration of the Director and its auditors in attempting to ensure that everyone pays their fair share, it is important to realize that the fair share is a requirement for everyone regardless of the condition of their books and records, or, their attempts to evade taxes.  A wildly incorrect assessment could become a <u>de facto</u> penalty on the taxpayer.  The court is by no means suggesting that has occurred here.   However, it is the Legislature that determines and has determined the appropriate penalties.  <u>See, e.g.</u>, N.J.S.A 54:49-4(a) (underpayment penalty of five percent); N.J.S.A. 54:53-18, -19, -20 (failure to utilize amnesty penalty of five percent); N.J.S.A. 54:49-9.1 (civil fraud penalty of fifty percent).

On the other hand, the taxpayer cannot expect an assessment to be exact, when it is the taxpayer who has failed to provide the necessary records.  An audit which is merely imperfect is acceptable so long as it is not aberrant.  <u>Yilmaz</u>, 390 N.J. Super. at 442, 23 N.J. Tax at 368 (citing <u>Charley O's Inc. t/a Scotty's Steakhouse v. Dir., Div. of Tax'n</u>, 23 N.J. Tax 171, 186 (Tax 2006)).  A naked assertion by the taxpayer without support is insufficient to rebut an audit determination.  <u>Yilmaz</u>, 390 N.J. Super. at 440, 23 N.J. Tax at 366.   The taxpayer needs to either set forth a particularized issue concerning the data utilized or the soundness of the reconstruction methodology.  <u>Coliseum Pizza</u>, 24 N.J. Tax at 376.  Such challenge must consist of evidence that is definite, positive and certain in quality and quantity. <u>Yilmaz</u>, 390 N.J. Super. at 440, 23 N.J. Tax at 366.  As summarized by the Appellate

Division, there must be evidence that the amount of the assessment is far wide of the mark for the taxpayer to overcome the presumption. Yilmaz, 390 N.J. Super. at 441, 23 N.J. Tax at 366. The Director does not have to establish that he used the best possible method to estimate the taxpayer's receipts, when it was the taxpayer's failure to comply with the statutory mandate of maintaining adequate records that forced the Director to resort to the mark-on method in the first place. Yilmaz, 22 N.J. Tax at 235-36. The Director has wide latitude in fulfilling this mandate. Id. at 235.

In this case, the audit period covered both periods before and after Superstorm Sandy. The taxpayer alleges that the records were destroyed in Superstorm Sandy, but fails to explain why it could not produce records for the periods after Superstorm Sandy. What is troubling is that taxpayer, probably inadvertently, included amongst its bank records a point of sale report from its computerized cash register system for one particular quarter, which revealed that the taxpayer had $38,824 in credit card sales and $55,877 in total sales. Curiously, the amount of sales tax reported for the quarter only included the credit card sales. In other words, on this evidence alone, the taxpayer underreported the amount of income by about a third for that quarter.

It must be remembered in this case that, unlike Yilmaz which was a decision after a trial, this is a motion for summary judgment in which all reasonable inferences must be in the taxpayer's favor. Brill v. Guardian Life Ins. Co. of Am., 142 N.J.

-8-

520, 536 (1995). See Yilmaz, 22 N.J. Tax at 217-19. Moreover, one must remember that taxation is a practical matter, never losing sight of common understanding and experience. In re Estate of Lichtenstein, 52 N.J. 553, 569 (1968).

The court does not have a problem with the approach which the Director has undertaken to determine the fair amount of tax which is due and owing from the taxpayer. Taxpayer's records were woefully inadequate. The concern of whether this lack of records was by choice, or the chance of Superstorm Sandy is irrelevant. The actual concern is whether the tax assessed against the taxpayer is a fair approximation of what is due and owing.

The taxpayer failed to even provide a complete selection of purchase invoices for a quarter. Accordingly, the Director should not be hamstrung as to completing the mark-on procedure. Instead, the Director was forced to estimate sales based upon the auditor's common understanding and experience. There is no evidence in the record for the court to quarrel with this method utilized, and there is nothing even facially to challenge the method utilized. The Director is recognized as having a certain expertise in dealing with the audit matters. Criticare, Inc. v. Dir., Div. of Tax'n, 28 N.J. Tax 169, 183 (Tax 2014).

As stated previously, the auditor went through the menu items one-by-one, and listed their proportionate share of the total sales of the taxpayer. The taxpayer has no reasonable expectation of the auditor doing something else, or avoiding

taxation all together, by not providing sufficient documentation to arrive at some other product mix. It has to be remembered that it is the taxpayer in the first instance that controls this information, and not the Director. The Director can only do the best that he can with the information that is available to him. In other words, this estimation of menu item sales may be imperfect, but it is certainly not aberrant, and therefore appropriate in these circumstances.

As to the pricing of ingredients and menu items which the taxpayer failed to provide invoices, the Director's auditor can fairly price those ingredients based upon experience. For example, none of the invoices provided list ground beef, an ingredient which the taxpayer does not dispute it uses in some of its dishes. As a result, the auditor, based upon his experience, utilized common market prices for this item as well as other items which the taxpayer failed to provide invoices. Once again, this may be imperfect, but is certainly not aberrant.

However, the court does have some concerns about the list of ingredients constituting the menu items. This does not go to the soundness of the reconstruction methodology, but rather, it plainly appears that there are some particularized issues concerning the data utilized. Coliseum Pizza, 24 N.J. Tax at 376. As it more specifically pertains to this case, there is concern as to the lack of data utilized. A review of the ingredients constituting the menu items from the menu itself, reveals a number of significant items being overlooked. This is not by any means to suggest

that every last pinch of salt must be included when the Director is reconstructing product cost to determine a mark-on ratio. However, the omission of key ingredients raises questions of the audit from a qualitative standpoint.

The Director determined it cost $11,323.32 to serve up $56,360.17 of menu items. The Director seemed to focus upon the major ingredient for each menu item while not fully listing other ingredients which are key to the dish.

For example, for the entrée veal saltimbocca, the auditor does not account for prosciutto, a type of ham, and an essential ingredient to veal saltimbocca listed on the menu. Needless to say, the prosciutto in pizza prosciutto is not included. Another example is the entrée veal fungi [sic]. Funghi is the Italian word for mushroom. In any event, the menu lists mushrooms as an ingredient. No mushrooms are listed on the compilation of ingredients. There is also a caesar salad listed, but not any listing for romaine lettuce, nor any type of lettuce.

Some of the other items which are not listed, but are clearly part of the items sold which are relied upon by the Director in formulating the mark-on include romano cheese, parmigiano cheese, provolone cheese, eggplant, roasted peppers and onions. Once again, this is not to say that it is necessary for the Director to list every last pinch of salt utilized in every single dish. That would certainly be ridiculous and unreasonable, and is made even more unreasonable by the taxpayer's failure to provide adequate books and records. However, there must be some reasonable

attempt to capture essential food items utilized by the taxpayer to reach a fair approximation of the taxpayer's tax obligation. Not including the multitude of items which were plainly listed on the menu relied upon by the Director calls into question the accuracy of the approximation.

While, the court accepts the proportionate mix of menu items as an appropriate representation of sales, the court is concerned whether all substantial ingredients in this menu mix were accounted for in the audit. Missing items increase the mark-on and are magnified when applied to the full audit period.

Through the extrapolation of the mark-on method, a small change in ingredients can effect a large change in the amount of tax owed. In this case, the mark-on ratio is 4.98, which the auditor adjusted for beverages, spoilage and other loss to 4.891062.[5] If there were about $1,700 more in menu ingredients, the ratio would be reduced to 4.40, which would translate to a $21,803 reduction in tax liability.[6] Roughly speaking, this fifteen percent increase in ingredients results in an

---

[5] The auditor used a different mark-on for beverages based upon his experience. For purposes of argument, the court accepts the auditor's beverage mark-on.

[6] With a $1,700 addition in food costs, the cost of goods would be $13,023.32. $56,360.17 in sales divided by $13,023.32 in costs yields an initial mark-on ratio of 4.33. Adjusting for beverages and spoliation would result in a mark-on of 4.40. Multiplying the mark-on by the product cost during the audit period of $634,288 results in audited sales of $2,790,867 for a total sales tax liability of $195,361. This is $21,803 lower than the sales liability calculated by the Director using the mark-on ratio of 4.891062.

approximate fifteen percent reduction in tax liability. To reiterate, this is not to suggest that every dash of salt needs to be accounted for, yet, on the other hand, based upon the overall amount of ingredients missing, there is sufficient basis to deny the defendant's motion for summary judgment with the issue below being considered as well.

In addition, the taxpayer quantitatively raises particularized issues concerning the data utilized by Director. While this is a common refrain of taxpayers in these types of cases, giving all reasonable inferences to taxpayer, there appears to be significant errors in the Director's compilation of data that render the audit more than just imperfect. For example, the taxpayer indicates that the cost of the bronzino fish in the bronzino entrée is $11.25 versus the Director's estimate of $3.43.[7] Moreover, the Director lists the price of the dish as $14.99 instead of $36.00 as indicated by the taxpayer. The taxpayer does not challenge the Director's methodology.

Thus, changing the selling price from $14.99 to $36.00 increases the total sales from $56,360 to $65,859. Likewise, the increase in product costs goes from $11,323 to $14,857. This results in an initial mark-on of 4.43. Adjusting for beverages, spoilages and other losses, the mark-on becomes 4.48. Multiplying this

---

[7] This is due to the director alleging an eight-ounce serving. On the other hand, the taxpayer indicates it uses a two-pound whole fish, and after fileting, yields a twenty-four-ounce serving.

mark-on by the cost of goods during the audit period of $634,288 results in audited sales of $2,841,610 for a total sales tax liability of $198,913. This is $18,251 lower than the sales liability calculated by the Director using the mark-on ratio of 4.891062. Giving all reasonable inferences to the taxpayer, this difference coupled with the missing ingredients on the product cost compilation is sufficient basis to deny plaintiff's motion for summary judgment.

Finally, it is noted that the taxpayer's accountant arrived at a mark-on of 2.04. However, no support for this number was provided rendering it a naked assertion. Rather, the certification of taxpayer's principal indicates "[o]n the whole, it [the food cost] averages 33% [of the selling price] which is consistent with our type of restaurant in the industry." A food cost of 33% translates to a mark-on ratio of 3.0 (100%/33%).[8] Conversely, the Director determined the mark-on to be 4.891062.

To summarize, the parties disagree as to whether the mark-on ratio should be 3.0, or closer to 5.0. However, buried in the record is the auditor's notes from January 12, 2014, in which he indicates "I explained to the representative that without invoices or register tapes I would use the goods available for sales and

---

[8] While this is a naked assertion as applied to the facts of this case, in Yilmaz, the mark-on of the Director of 2.8388 was upheld, and in Coliseum Pizza the mark-on of 3.1613 was also upheld. Yilmaz, 22 N.J. Tax at 225, 243. Coliseum Pizza, 24 N.J. Tax at 372, 377.

multiply them by an industry average [mark-on ratio] of 4 to arrive at the audited gross receipts."

While the taxpayer does indeed have the burden of overcoming the presumption, the court looks at the evidence of the taxpayer through rose-colored glasses. MSGW Real Estate Fund, LLC v. Borough of Mountain Lakes, 18 N.J. Tax 364, 379 (Tax 1998). Giving all reasonable inferences to taxpayer as to the factual data presented, the taxpayer could overcome the presumption at trial. Thus, there is sufficient reason to set this matter down for trial to resolve the factual disputes as to the underlying data, including its completeness. For the foregoing reasons, the Director's motion for summary judgment is denied.