NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

# TAX COURT OF NEW JERSEY



**JONATHAN A. ORSEN**
JUDGE

153 Halsey Street
Gibraltar Building - 8th Floor
Newark, New Jersey 07101
(609) 815-2922 Ext. 54600
Fax: (609) 815-2923

March 27, 2020

Carl David Gensib, Esq.
850-870 Route 1 North
North Brunswick, New Jersey 08902

Heather Lynn Anderson, Esq.
Office of the Attorney General
Division of Law
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, New Jersey 08625

> Re: **Nino Pizza Star Corp v. Director, Division of Taxation**
> Docket No. 015828-2014
>
> **Antonio Spera and Daniela Ciminella v. Director, Division of Taxation**
> Docket No. 015567-2014

Dear Counsel:

This opinion constitutes the court's decision of the parties' respective summary judgment motions in the above matters. Defendant, Director, Division of Taxation (the "Division") moved for summary judgment claiming that it properly assessed additional tax, interest, and penalties on Nino Pizza Star Corp. and Antonio Spera and Daniela Ciminella (together "plaintiffs", and "Nino" to reference the corporate plaintiff), for the audit period January 1, 2008 through September 30, 2012. The Division argued that Nino failed to maintain and provide adequate books and records, which authorized the Division to use the mark-on methodology to reconstruct Nino's gross sales, and deem the increased imputed sales as personal income of the individual plaintiffs, in order to calculate plaintiffs' respective tax liabilities. Therefore, the Division maintained, plaintiffs had

   

failed to present the evidence needed to overcome the presumption of correctness that attaches to its final determinations assessing additional tax upon plaintiffs, which permits this court to grant judgment in its favor and dismiss the above-captioned complaints with prejudice. Plaintiffs opposed the Division's motion, filed a cross-motion, and argued that the books and records provided during the audit period were adequate so that the Division did not have to engage in an artificial mark-on method to unreasonably inflate the corporate receipts, and that the Division's refusal to consider any explanation for the discrepancy in purchase invoices resulted in a flawed reconstruction of Nino's gross sales and subsequent tax liabilities.

For the reasons stated more fully below, the court finds that plaintiffs have provided meritorious opposition to show that there are material facts in genuine dispute regarding the correctness of the Division's final determinations. As such, the court denies both parties' motions for summary judgment.

**FACTS**

All the facts herein are based on the certifications in the moving papers, which comprise of the information gathered by the Division during the audit process as incorporated in the auditor's correspondence, pre-audit questionnaire, audit and conference reports, and plaintiffs' responses provided to the Division during this process.

Nino is a New Jersey C-corporation, wholly owned and operated by Antonio Spera. Mr. Spera is a New Jersey resident. The business of the corporation is a pizzeria located in Princeton, New Jersey. The pizzeria has a total seating capacity for eighty-two people and sells pizza, sandwiches, appetizers, calzones, deserts, various entrees, bottled and fountain drinks. Approximately 80% of its business is eat-in, 20% is take-out services and the pizzeria does not

offer delivery services. The restaurant is open seven days a week from 10:30 a.m. to 10:30 p.m., except certain holidays. There were no daily specials and no coupons were accepted.

The pizzeria has one cash register, which is not computerized. Plaintiffs stated that due to its age, the machine often did not produce register tapes, and thus was used primarily as an adding machine. When the register ran tapes, according to plaintiffs, these tapes were not retained. Nonetheless, plaintiffs explained that all of the monies the company received in sales are deposited in Nino's corporate bank account.

On November 13, 2012, the Division mailed an initial contact letter advising plaintiffs that it would be conducting an audit of the pizzeria. On December 14, 2012, an auditor met with Mr. Spera who referred the auditor to plaintiffs' accountant, Stan Segal. The auditor met with Mr. Segal on January 3, 2013 to review the pizzeria's business records and on January 24, 2013 to complete the pre-audit questionnaire. Mr. Segal subsequently emailed the auditor on May 1, 2013, stating that he no longer represented plaintiffs, and that Mr. Carl Gensib, Esq. was plaintiffs' new representative.

The auditor met with plaintiffs' representative on five separate occasions in 2013: June 11, September 11, October 11, November 12, and November 21. It was agreed by both parties that the 2011 tax year was to be the sample year. As stated in the Audit Report, the following documentation and records were provided by plaintiffs for the 2011 sample year:

> a general ledger, Excel spreadsheet in lieu of a sales or receipts journal, some purchase and expense invoices, bank statements and cancelled checks, payroll information, depreciation schedules, a purchase journal, its Corporation Business Tax return, and a copy of the pizzeria's menu.

The records that were not available for 2011 included a sales or receipts journal (although the auditor notes that the taxpayer had an Excel spreadsheet summary), cash register tapes, and some purchase and expense invoices. As set forth in the auditor's certification and corresponding

3

Audit Report with regard to the specified records as being inadequate or not being available, the auditor substantiated the use of the mark-on method. The Audit Report further explains, "Records were not acceptable for the audit, as some were missing or not available. [Ample] time was provided to the Taxpayer to produce these documents. Therefore an alternative method was utilized to audit gross receipts." Accordingly, the auditor determined that a mark-on analysis was necessary in order to compute gross sales.

The auditor formulated a mark-on figure by first entering all of the purchase invoices provided by plaintiffs for 2011 into a spreadsheet, then compared the total amount to the purchases listed in the pizzeria's general ledger. The general ledger, and the amount included on Nino's Corporation Business Tax (CBT) return, listed purchases of $191,418. The purchase invoices plaintiffs provided however totaled $284,454, after a reduction for non-taxable supplies. The auditor noted that the pizzeria had been receiving deliveries from supplier Vesuvio Foods under two different names and account numbers: (1) 922093 designated Pizza Star – North Harrison, and (2) 16101 designated Pizza Star – D. Plaintiffs assert that the customer invoices for the second account number were not used in Nino's business. The two different names and account numbers could not be explained during the audit. After considering beginning and ending inventories, the auditor determined that the total audited cost of goods sold (i.e., purchases) for 2011 was $287,454. This number when compared to the total of the purchase invoices, he concluded, showed that the purchases were under-reported by 147.85% ($287,454 ÷ $194,418 = 1.4785). The auditor then applied the error percentage to determine the audited cost of goods sold for each year under audit.

Without determining the actual mark-on for any of the products, products mixes, or portions sold by the pizzeria, the auditor rejected the mark-on ratio reported on Nino's CBT returns and decided to use an estimated 3.0 average mark-on ratio, which he felt was the average rate for

4

pizzerias located in Princeton. He then decreased the estimated average mark-on ratio to 2.8 in order to reflect allowances for non-receipts such as waste, spillage, spoilage, and any employee meals.

After plaintiffs' accountant submitted additional documentation in support of tax-exempt sales, the auditor reduced the audited gross sales for each year and applied the estimated 2.8 mark-on ratio to each year's audited cost of goods sold to obtain the audited gross sales for the audit period. The auditor reduced this amount by the total taxable sales reported by plaintiffs on its Sales & Use tax (SUT) returns and determined additional taxable sales for the audit period by applying a 7% sales tax rate. The additional sales tax liability was calculated to be $90,405.64 under N.J.S.A. 54:32B-19.

The auditor further determined that Nino owed an additional $61,994.90 in CBT as a result of the additional gross taxable sales derived from the mark-on analysis under N.J.S.A. 54:10A-6.

Mr. Spera was deemed to have received a "constructive distribution" of C-corporation income, resulting in a gross income tax (TGI-EE) assessment for him and his wife, for the audited tax periods in the amount of $39,935.32, including penalty and interest.[1]

Although plaintiffs certified during the audit that the pizzeria only had two full-time employees: Mr. Spera and another employee, the auditor certified that he personally observed five employees at the pizzeria on two separate occasions. For purposes of this summary judgment motion, plaintiffs certified that the two employees were paid weekly in cash, and that Mr. Spera received an annual salary of $57,000 via paycheck. Consequently, the auditor estimated the cost of three additional employees at $10 per hour, 40 hours per week, 52 weeks per year, for each year

---

[1] Daniela Ciminella is included in the final determinations and these complaints due to filing joint gross income tax returns with her spouse, Antonio Spera.

under the audit. He applied a 2.5% tax withholding rate, and calculated the gross income tax-employer withholding (GIT-ER) tax liability due for the audit period to be $4,680. Plaintiffs deny the allegation of additional employees working at the pizzeria but did not provide payroll summaries or W-2s for its alleged single employee.

According to the auditor, Nino never reported litter tax. Plaintiffs admitted to never paying litter tax. The auditor calculated litter tax due in the amount of $870.98.

On March 14, 2014 and March 25, 2014, plaintiffs filed protests with the Division's Conference and Appeals Branch against the audit disputing the issued Notices of Tax Due to them. Conferee Jeffrey Schwab ("conferee") contacted plaintiffs' representative and requested that the following documents be provided: cash register tapes for the audit period, sales journals for the audit period, a reconciliation of cash register tapes for one quarter, and any additional documentation that plaintiffs wanted to be included in the audit record. An administrative conference was held on June 17, 2014, to which the accountant failed to call in as "it was obvious from the conferee's communication he had no intention to make a good faith review."

On October 17, 2014, the Division issued a Final Determination in the amount of $212,820.63, including penalty and interest for Nino, and $39,935.32, including penalty and interest for individuals Spera and Ciminella.

Mr. Spera filed a complaint with the Tax Court on November 12, 2014, while Nino Pizza Star, Inc. filed a complaint with the Tax Court on December 18, 2014. Subsequently, all parties moved for summary judgment, with the Division moving initially and the plaintiffs cross-moving thereafter. The Division argued that its motion for summary judgment should be granted as the plaintiffs had allegedly failed to provide adequate books and records, and that its determinations were entitled to a presumption of correctness. Plaintiffs countered by asserting firstly, that

6

adequate books and records were provided to the Division during the audit period; and secondly, even after reviewing all of the information and records provided during the audit period, the Division erroneously and intentionally determined that plaintiffs books and records were inadequate, necessitating the application of an arbitrary mark-on analysis. Further, they argued, the Division should have used corroborative evidence as a check for its conclusions, such as "contacting Vesuvio Foods, [Nino's] supplier and making basic inquiries as to why product was being delivered under a second account number," rather than artificially inflating Nino's sales.

**DISCUSSION**

In order to determine whether summary judgment is appropriate at this juncture, the court must determine whether there exists a disputed material fact concerning the defendant's audit.

In Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 20 (1995), the New Jersey Supreme Court articulated the summary judgment standard as follows:

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the nonmoving party.
>
> [Brill, 142 N.J. at 523.]

"Furthermore, 'the court must accept as true all evidence which supports the position of the party defending against the motion and must accord him (or her) the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied.'" Alpha I, Inc. v. Dir., Div. of Taxation, 19 N.J. Tax 53, 56 (Tax 2000) (citing Brill, 142 N.J. at 535).

Additionally, <u>Brill</u> also provided that,

> By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion *only* where the party opposing the motion has come forward with evidence that creates a "genuine issue as to any material fact challenged." That means a non-moving party cannot defeat a motion for summary judgment merely by pointing to *any* fact in dispute.
>
> [<u>Brill</u>, 142 N.J. at 529.]

In fact, disposition by summary judgment is only proper "where the party opposing summary judgment points only to disputes issues of fact that are 'of an insubstantial nature.'" <u>Brill</u>, 142 N.J. at 529. "Substantial" in the context of summary judgment is "[h]aving substance; not imaginary, unreal, or apparent only; true solid real, . . . firmly based, a substantial argument." <u>Ibid.</u> (quoting *Substantial*, <u>The Compact Oxford English Dictionary</u> (2d ed. 1993)).

It is firmly established that "an assessment of sales or use tax is presumptively correct." <u>Quest Diagnostics, Inc. v. Dir., Div. of Taxation</u>, 21 N.J. Tax 484, 490 (Tax 2004), <u>aff'd</u>, 387 N.J. Super. 104 (App. Div. 2006). If the challenge to the Division's audit methodology stems from an assertion of inadequate books and records, a plaintiff can only rebut the presumptive correctness of the assessment through "cogent evidence that must be 'definite, positive and certain in quality and quantity to overcome the presumption.'" <u>Yilmaz, Inc. v. Dir., Div. of Taxation</u>, 22 N.J. Tax 204, 236 (Tax 2005), <u>aff'd</u>, 390 N.J. Super. 435 (App. Div. 2007). Plaintiffs must offer evidence that focuses on the "reasonableness of the underlying data used by the Director and the reasonableness of the methodology used." <u>Ibid.</u> Only an aberrant methodology will overcome the presumption of correctness; an imperfect methodology will not. <u>Ibid.</u> Further, "naked assertions of a taxpayer, without supporting records or documentation, are insufficient to rebut the presumption that the Director's assessment was correct where it produced no evidence to support its claim that the Director's assessment is correct." <u>Id.</u> at 231.

The general legal principles applicable to a claim involving a challenge to the audit methodology used by the Division due to inadequate books and records are well settled. One is that a corporate taxpayer is required to keep sufficient books and records in order for the Division to determine proper tax liabilities. A second is that a presumption of correctness attaches to the Division's assessment of tax.

Pursuant to statute, a corporate taxpayer must keep sufficient books and records in order for Taxation to determine proper sales tax liabilities. N.J.S.A. 54:32B-16; N.J.A.C. 18:24-2.3, -2.4. As further set forth in the regulations, a taxpayer must make available to Taxation "[a] true copy of all sales slips, invoices, receipts, statements, memoranda of price, or cash register tapes, issued to any customer . . . and records of every purchase and purchase for lease," which must be retained "for four years from the date of filing of each quarterly sales tax return." N.J.A.C. 18:24-2.3(a).

For tax periods prior to the regulation change in 2016, if summary records are maintained that "show . . . total receipts and taxable receipts," during the tax years under appeal in this case, a taxpayer could "dispose of individual sales slips, invoices, receipts, statements, memoranda of price, or cash register tapes . . . after the lapse of a period not less than 90 days from the last date of the most recent quarterly (or monthly) period for the filing of sales tax returns to which such individual sales documents pertained." N.J.A.C. 18:24-2.4(a); see also 47 N.J.R. 2919(a) (Dec. 7, 2015); 48 N.J.R. 824(a) (May 16, 2016) (amending regulation to eliminate ninety-day exception for individual records and imposing four-year retention period).[2]

---

[2] Effective May 16, 2016, a taxpayer must "maintain individual sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks for a period of four years from the last date of the most recent quarterly period for the filing of sales tax returns." N.J.A.C. 18:24-2.4(a). As the audit period extends only from January 1, 2008 through September 30, 2012, this amended provision does not apply in this case.

9

If the taxpayer has failed to keep the required books and records, or if the books and records maintained do not clearly reflect income, Taxation has broad authority to reconstruct income "by using any information available, whether from the vendor's place of business or from any other source." See N.J.S.A. 54:32B-19; Yilmaz, 22 N.J. Tax at 231, 235; Alpha I, 19 N.J. Tax at 57; L.B.D. Const., Inc. v. Dir., Div. of Taxation, 8 N.J. Tax 338 (Tax 1986); Ridolfi, t/a Hub Bar v. Dir., Div. of Taxation, 1 N.J. Tax 198 (Tax 1980). The determination whether a taxpayer's records are "inadequate" depends on the facts and circumstances of each case. Saulwil, Inc. v. Dir., Div. of Taxation, 2020 N.J. Tax LEXIS 1, at *21 (Tax 2020).[3] Further, while this court can decide, based on evidence properly before it, whether a taxpayer has overcome the presumptive correctness of an audit determination, such evidence can also be examined to decide whether Taxation's initial conclusion as to the inadequacy of books and records was reasonable. Id. at *20–21.

In the current case, the Division's moving papers included a detailed certification and Audit Report of the auditor who conducted the examination of plaintiffs' business. It explains the documents requested, those provided, and those not provided by the plaintiffs. As set forth in the auditor's certification and Audit Report, plaintiffs provided a general ledger, Excel spreadsheet in lieu of a sales or receipts journal, some purchase and expense invoices, bank statements and cancelled checks, payroll information, depreciation schedules, a purchase journal, CBT returns, and a copy of the pizzeria's menu. The records not available included a sales or receipts journal as noted, cash register tapes and some purchase and expense invoices. The Audit Report further

---

[3] This decision has been approved for publication but has yet to be published in the New Jersey Tax Reports, the official publication for Tax Court cases.

explains that since the provided records were not acceptable for the audit, as some were missing or not available, an alternative method was utilized to audit gross receipts.

It is unclear why Taxation's mark-on analysis was necessary to determine the gross sales if Taxation had access to the summary receipts Excel spreadsheet, purchase journal, and bank statements without review and explanation. The regulations do not explicitly require the retention of register tapes provided that summary records were available.

Irrespective of whether the records exist or whether their production would be unduly burdensome, it is clear that plaintiffs retained summary records of total and taxable receipts in the form of an Excel spreadsheet. As these summary records provide income information, the regulation may have permitted plaintiffs to dispose of their cash register tapes. Plaintiffs must still retain complete purchase and expense invoices for four years from the filing date. N.J.A.C. 18:24-2.8(a). The regulations do not appear to explicitly require plaintiff to retain deposit slips, cash payout records, or check registers. See, e.g., N.J.A.C. 18:2-7.11 (retention requirements for corporations); N.J.A.C. 18:24-2.1 to -2.15 (retention requirements for sales and use tax). But cf. N.J.A.C. 18:2-7.3(a) ("A taxpayer shall maintain all records that are necessary to a determination of the correct tax liability. . . . Such records shall include, but not be necessarily limited to, books of account, invoices, sales receipts or other documents required to be maintained by any specific tax statute or regulation of this State."). The lack of some purchase and expense invoices, or of the cash register tapes, is not a strong justification for a mark-on analysis when bank statements, checks and the menu were provided as information to corroborate Nino's gross sales or receipts.

Further, the Division's exhibits in support of its motion include a spreadsheet showing a list of orders from one of the pizzeria's suppliers, Vesuvio Foods, for which plaintiffs apparently provided 29 invoices for "Pizza Star – North Harrison" and 22 invoices for "Pizza Star – D" of

11

106 total orders. For each order, including those without invoices, the Division had the order date, order number, and payment amount listed in the spreadsheet. It thus had third-party information from which it could decide whether plaintiffs' assertion that the additional purchase invoices billed to a different account, were for "the business of a family member operating another pizzeria in the area." However, the Division apparently chose not to believe plaintiffs, and decided to include these purchases as Nino's. The court finds that plaintiffs have formulated a particularized issue (namely, the inclusion of the additional invoices), further establishing that genuine issues of material fact exist under Brill concerning the data used in the Division's reconstruction methodology to warrant trial in this matter. Such an assertion also implicates credibility issues, as to which summary judgment is wholly inappropriate.

Because the justification for embarking upon a mark-on analysis was the inadequacy of plaintiffs' records, the court finds that summary judgment on the reasonableness of the assessed taxes is inappropriate. Further, the necessity and determination of the reasonableness of the mark-on percentage for 2011 and as applied to the other tax years needs to be evaluated at trial in this case. It is inappropriate to summarily decide the material issue of the adequacy of books and records without considering contrary factual proofs available from plaintiffs that Taxation did not peruse. See, e.g., Yilmaz, 22 N.J. Tax at 236 (presumptive correctness of an assessment can be overcome if the taxpayer can prove otherwise with cogent evidence that must "focus on the reasonableness of the underlying data used by the Director and the reasonableness of the methodology used").

In addition to sales and use tax, the above stated reasons also constitute the basis for denying summary judgment on the gross income tax employer withholding, corporation business tax, litter tax, and personal gross income tax assessments on the individual plaintiffs, as those

assessments are purely a consequence of the corporate audit.  Until the Division's corporate audit's validity is tried, the court cannot confirm these assessments by way of summary judgment.

## CONCLUSION

For the reasons set forth above, the court concludes that parties' respective motions for summary judgment are **DENIED**, and the matters will be tried.

Very truly yours,

_____

Hon. Jonathan A. Orsen, J.T.C.