PER CURIAM
Defendant Director, Division of Taxation, appeals from a July 6, 2012 order granting summary judgment to plaintiff Estate of Theodore Warshaw allowing a tax refund in the amount of $88,677. We reverse.
On May 27, 2006, decedent died. At that time, he had owned an Individual Retirement Account (IRA) with Bernard L. Madoff Investment Securities, LLC (BLMIS). During decedent’s lifetime, he had invested $627,173.25 in the IRA and received distributions in the amount of $1,113,338.67. Shortly after his death, the Estate’s executors transferred the IRA to a trust for the benefit of decedent’s wife, who then received distributions from the IRA in the amount of $185,148.35 in the 2007 tax year, and $90,477.99 in the 2008 tax year.
In February 2007, plaintiff made an estimated payment of New Jersey Resident Estate Tax in the amount of $90,000. In July 2007, plaintiff filed a New Jersey Resident Estate Tax return indicating that the total estate tax due was $88,677. The Division then requested verification that the amounts reported on the Estate’s tax return, including the IRA, totaled $1,463,773.18. The Division received supporting documentation and then refunded the Estate $1323, the difference between the $90,000 payment and the actual taxes due of $88,677.
In December 2008, Madoff was charged with securities fraud. In January 2009, the Estate notified the Division that the value of the IRA was worthless and requested a refund in the amount of $88,677. The Estate maintained, essentially, that the additional refund of $88,677 was warranted because of Madoff s arrest. In February 2009, the Division denied the Estate’s request indicating that “the Estate has not substantiated that subsequent events [of *290 Madoff s arrest] have altered the value of [the IRA] as of the date of [decedent’s] death.”
In April 2009, plaintiff filed its complaint in the Tax Court. Plaintiff alleged that the purportedly worthless IRA reduced the value of the Estate below the New Jersey estate tax exemption threshold. As a result, plaintiff sought a refund in the amount of $88,677.
In February 2011, plaintiff moved for summary judgment, and the Division cross-moved for the same relief. In November 2011, the Tax Court judge conducted oral argument. Plaintiff contended that the Estate was overvalued by $1,463,773.18, or alternatively, that the value of the IRA is not greater than $275,624.34, which is the total of distributions received by decedent’s wife. The Division argued that the value of the Estate is to be determined as of the date of death. It maintained, therefore, that Madoffs arrest should not be considered when determining the value of the IRA and assets of the Estate.
On June 28, 2012, the Tax Court judge issued an eighteen-page written opinion. Although he remarked that “events [occurring] subsequent to the decedent’s death are not considered to determine the date of death value of decedent’s gross estate,” the Tax Court judge did, in fact, rely on events post death to value the estate. He stated that
[subsequent events may be considered to show evidence of the value of the [EJstate on the date of death. In the instant matter, approximately [thirty] months passed from decedent’s death to the arrest of Madoff for his role in the Ponzi scheme. Accordingly, I conclude that the subsequent information regarding the Madoff Ponzi scheme is relevant to the determination of fair market value of the IRA.
As a result, the Tax Court judge determined that the IRA was valueless, granted plaintiffs motion, and concluded that the Estate is entitled to the refund based on a “mistake of fact.” This appeal followed.
On appeal, the Division argues that the Tax Court judge misapplied the law and made unsupported factual determinations. Regarding the misapplication of the law, the Division contends that the Tax Court judge erred by considering events that occurred *291 after the date of death. It asserts that post-death events should have no effect on the valuation of property for Estate tax purposes. Moreover, the Division asserts that the Tax Court judge determined, without any factual basis, that “[djecedent’s IRA did not contain cash, securities, bonds[,] or other investment vehicles,” and that “a willing buyer would have undertaken] a due diligence investigation to determine what assets were in the IRA by requesting supporting documents like stock certificates.”
A Tax Court judge’s findings will not be disturbed unless we conclude they are arbitrary or lack substantial evidential support in the record. Yilmaz, Inc. v. Dir., Div. of Taxation, 390 N.J.Super. 435, 443, 915 A.2d 1069 (App.Div.), certif. denied, 192 N.J. 69, 926 A.2d 854 (2007). Moreover, the Director’s assess ments generally carry a presumption of correctness. Id. at 440, 915 A.2d 1069. We must recognize the Director’s expertise in “ ‘the specialized and complex area’ ” of taxation. Reck v. Dir., Div. of Taxation, 345 N.J.Super. 443, 446, 785 A.2d 476 (App.Div. 2001) (quoting Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)), aff'd o.b., 175 N.J. 54, 811 A.2d 458 (2002). We also recognize the Tax Court’s expertise in the same area. Little Egg Harbor Twp. v. Bonsangue, 316 N.J.Super. 271, 285, 720 A.2d 369 (App.Div.1998). We have recognized that “the Director’s interpretation of law will prevail unless it is plainly unreasonable.” Wells Reit II-80 Park Plaza, LLC v. Dir., Div. of Taxation, 414 N.J.Super. 453, 461-62, 999 A.2d 489 (App.Div.2010) (internal quotation marks omitted). We do not, however, defer to legal determinations made by the Director or the Tax Court. UPS v. Dir., Div. of Taxation, 430 N.J.Super. 1, 8, 61 A.3d 160 (App.Div.2013).
We begin by noting that decedent invested in a high risk pool to obtain higher returns. BLMIS offered higher rates than other investment firms. In re Bernard L. Madoff Inv. Sec., 654 F.3d 229, 231 (2d Cir.2011). As a result, decedent’s investment also carried a higher risk of loss. “Although taxpayers are free to organize their affairs as they see fit, they remain bound by the tax consequences of their business decisions.” UPS, supra, 430 *292 N.J.Super. at 8, 61 A.3d 160 (citing Gen. Trading Co. v. Dir., Div. of Taxation, 83 N.J. 122, 136-37, 416 A.2d 37 (1980)).
Nevertheless, plaintiffs contention that the IRA was worthless at the date of death is belied by the record. Decedent invested $627,173.25 with BLMIS and withdrew $1,113,338.67 from his account. As a result, decedent received $486,165.42 more than his investment. In connection with its refund claim, plaintiff represented to the Division that the IRA had a value of $1,463,773.18. As further evidence that the IRA had value, the IRA distributed to decedent’s wife the amount of $275,626.34 over two years after decedent died.
The value of a decedent’s gross estate is determined by the value of all property in the estate at the time of death. 26 U.S.C.A. § 2031(a). Value is considered to be fair market value, defined as what a willing buyer would have paid a willing seller, “both having reasonable knowledge of [the] relevant facts.” 26 C.F.R. § 20.2031-1(b) (2013). Ordinarily, events subsequent to death are not considered in fixing fair market value of a decedent’s gross estate. First Nat’l Bank v. United States, 763 F.2d 891, 893-94 (7th Cir.1985). “Because property is valued as of the date of death, the only relevant facts are those that this hypothetical buyer and seller could reasonably have been expected to know at that time.” Ibid. The exception to the general prohibition against consideration of post-death events is when the circumstances are “reasonably foreseeable at the date of [death].” Id. at 594, 999 A.2d 489.
It is well settled, therefore, that an estate is to be valued at the death of the decedent. In Ithaca Trust Co. v. United States, 279 U.S. 151, 155, 49 S.Ct. 291, 73 L.Ed. 647 (1929), the United States Supreme Court stated that
[t]he estate so far as may be is settled as of the date of the testator’s death. The tax is on the act of the testator not on the receipt of property by the legatees. Therefore the value of the thing to be taxed must be estimated as of the time when the act is done. But the value of property at a given time depends upon the relative intensity of the social desire for it at that time, expressed in the money that it would bring in the market. Like all values, as the word is used by the law, it depends largely on more or less certain prophecies of the future; and the value is no less real at that time if later the prophecy turns out false than when it comes *293 out true. Tempting as it is to correct uncertain probabilities by the now certain fact, we are of the opinion that it cannot be done.
[ (Citations omitted).]
There is no evidence in this record that suggests anyone had knowledge that BLMIS was running a Ponzi scheme around the date of decedent’s death. As a result, there was no basis to question the date-of-death value of the IRA, especially because decedent’s wife continued to receive substantial distributions in 2007 and 2008.
We therefore conclude that the record lacks substantial evidence to support the Tax Court judge’s determination that plaintiff is entitled to a tax refund. We have carefully reviewed the remaining arguments that plaintiff has made and conclude that they lack sufficient merit to warrant consideration in a written opinion. R 2:11-3(e)(1)(E).
Reversed.