**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2187-23

DARYL B. FOX, TRUSTEE
OF THE DONALD M. FOX
2006 REVOCABLE TRUST,

      Plaintiff-Respondent,

v.

SHAWN T. FOX and
DIANE FOX,

      Defendants-Appellants,

and

CHRISTOPHER FOX,

      Defendant.

_____

Argued February 4, 2025 – Decided June 27, 2025

Before Judges Firko, Bishop-Thompson, and Augostini.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. P-002730-21.

Shawn T. Fox, appellant, argued the cause pro se.

Richard H. Beilin argued the cause for respondent (The Wacks Law Group LLC, attorneys; Richard H. Beilin, on the brief).

PER CURIAM

Defendants Shawn T. Fox and Diane Fox appeal from the Chancery Part's February 14, 2024 order issued after a two-day bench trial, and several interlocutory orders, arising from a dispute concerning the purchase of two properties owned by the Donald M. Fox 2006 Revocable Trust (Trust). The relevant provisions in the Trust provided buy-out options for these properties for decedent Donald M. Fox's children and beneficiaries. Additionally, plaintiff and Trustee Daryl B. Fox sought to recover rental payments from Shawn[1] and Diane during the time they resided in one of the Trust's properties and an award of counsel fees. Having reviewed the record in light of the various errors alleged and the governing law, we affirm the interlocutory orders and as to the final February 14, 2024 order, we vacate, reverse and remand in part on the limited issue of the imposition of sanctions for frivolous litigation.

---

[1] Defendants Shawn, Diane and Christopher share the same surname. Therefore, we refer to them by their first names to avoid confusion, intending no disrespect.

A-2187-23

I.

We summarize the facts relevant to the issues on appeal from the trial record. In 2006, decedent created the Trust, amending it in 2018. Upon decedent's death, the Trust set forth provisions to distribute decedent's assets. Decedent served as Trustee of the Trust until his death on July 24, 2021.

Decedent had three children: Daryl, Shawn and Christopher. At the time of decedent's death, the Trust owned two properties located at: (1) 32 Charlottesburg Road, Boonton (the Boonton Property), and (2) 120 West Crystal Drive, Sanford, Florida (the Florida Property). The relevant provisions of the Trust concerning the properties are set forth in Article IV, Section 4.1A:

> A. My Residuary Trust Estate shall be divided equally between Shawn, if he shall survive me, Christopher, if he shall survive me, and Daryl, if she shall survive me (the shares of my Residuary Trust Estate payable to Shawn, Christopher and Daryl shall each be termed a "Child's Share").
>
> a. If the property located on 32 Charlottesburg Road, Boonton, New Jersey is still owned by the trust at the time of my death, I grant my son[]s, SHAWN and CHRIS[TOPHER], the power to purchase their sister's share of such property at the then fair market value.
>
> b. If the property located at 120 West Crystal Drive, Sanford, Florida, is still owned by the trust at the time of my death, I grant my daughter, DARYL, the power to purchase both her brother[s'] shares in such property valued at the then fair market value.

3                                                                        A-2187-23

Decedent designated plaintiff as his successor Trustee. Thus, upon his death in July 2021, plaintiff became Successor Trustee.

Defendants Shawn and his wife Diane moved into the Boonton Property in November 2020 to assist with decedent's care. Defendants testified that they had a verbal agreement with decedent to pay monthly rent in the amount of $1,800. After making four rental payments, in April 2021, defendants decided to stop paying rent but continued to live in the Boonton Property.

Plaintiff asserts that in December 2021, Christopher resided in the Florida Property at times until July 2022. Christopher paid $500 monthly rent to the Trust.

After decedent died, plaintiff, in her role as Trustee, made a written request to Shawn and Diane for rental payments in the amount of $2,800 per month. This amount was the same amount paid by the prior tenants of the Boonton Property. Plaintiff advised Shawn that he and his family could remain in the Boonton Property for a reasonable time, provided they paid rent, until the Property was sold. According to plaintiff's July 28, 2021 letter, Christopher was not presently interested in purchasing the Boonton Property, and she had not decided as to the Florida Property. Plaintiff requested that Shawn decide within

4

thirty days if he wished to buy out his siblings' share in the Boonton Property in accordance with the purchase option in the Trust.

Shawn and Diane continued to live in the Boonton Property and not pay rent. Therefore, on October 4, 2021, plaintiff demanded possession of the Boonton Property and required Shawn and Diane to vacate on or before October 11, 2021. Plaintiff advised that should Shawn and Diane not vacate the Property, plaintiff intended to file suit for relief, including ejectment.

Shawn and Diane responded by offering to pay rent in the amount of $2,800 and requested a proposed lease agreement. Plaintiff rejected this offer, testifying she was not interested in becoming a landlord; rather, her primary purpose as Trustee was to sell the properties, distribute the assets and close decedent's estate.

On October 25, 2021, plaintiff filed a verified complaint for ejectment against defendants, seeking (1) possession of the Boonton Property and removal of defendants from the Boonton Property (count one); (2) compensatory damages (count two); (3) a return of any trust assets in defendants' possession (count three); and (4) a declaratory judgment confirming that defendants are not entitled to purchase the Boonton Property (count four). As remedies, plaintiff sought possession of the Boonton Property and removal of Shawn and Diane

from the Boonton Property, issuance of a writ of possession, compensatory damages, and attorney's fees. Meanwhile, on November 22, 2021, plaintiff received an offer to purchase the Boonton Property for $800,000 from the prior tenants.

On January 5, 2022, plaintiff amended the complaint in part to add Christopher as an interested party. On January 10, 2022, the parties appeared for a hearing before the first trial court to address the Boonton Property. Plaintiff sought to have Shawn and Diane ejected from the Boonton Property. In addressing Shawn and Diane and the sale of the Boonton Property, which was the sole issue before the court, the first trial court stated:

> [Y]ou don't have a right to be living there. There is no right to live there right now. You are not on the deed. You don't have a lease. Legally there is no right to anyone being there. The property has to get sold.
>
> . . . If I hear that you are interfering with the sale of the property, I am going to have to eject you, because you don't have a legal right to be there. You are not on the deed, you don't have a lease.

The first trial court ordered date-of-death real estate appraisals of the Boonton and Florida Properties within thirty days. The first trial court then directed upon receipt of the appraisals, "the parties shall have a settlement conference with Christopher Luongo, Deputy Surrogate."

6

On February 1, 2022, defendants filed a counterclaim seeking: (1) to establish a constructive trust (count one); (2) specific performance by selling the Boonton Property to Shawn for fair market value (count two); (3) appointment of an independent successor Trustee (count three); and (4) a formal accounting of the Trustee's actions and the Trust's assets (count four). As remedies, Shawn and Diane sought to enforce the terms of the Trust, to establish the fair market value of the Boonton Property, to order the sale of the Boonton Property for the established fair market value, and attorney's fees. Shawn and Diane primarily contended that plaintiff was depriving them of their right to purchase the Boonton Property, further arguing that the Trust provided Shawn, Diane, and Christopher with the right to purchase the property jointly.

The appraisals were subsequently completed in approximately April 2022. An appraiser visited the Boonton Property on April 28, 2022, and appraised it at $575,000. The Florida Property was appraised at $360,000.

After the hearing before the first trial court, Shawn and Diane filed several motions, and the second trial court conducted a series of hearings regarding the properties. At a hearing on May 27, 2022, the second trial court granted Shawn and Diane's application for temporary restraints, preventing plaintiff from taking any action concerning the Boonton Property prior to an upcoming hearing

7

scheduled for June 8, 2022. The order stated that at the June 8 hearing, "the [c]ourt [will] hear argument on the merits of the underlying action and will thereafter enter an [o]rder directing the parties on how they may proceed with the sale or transfer of the [Boonton] Property."

At the May 27, 2022 hearing, Shawn raised the issue of a settlement conference now that the appraisals for both properties had been completed. Shawn stated that he "filed a motion for partial summary judgment not only to remove the Trustee, but also to determine . . . who has the right to purchase the property." Shawn asserted that Christopher "voluntarily waived his purchase right . . . ." However, Christopher countered this assertion, stating he had not waived his right to purchase the Boonton Property at any time.

On June 8, 2022, the second trial court conducted oral argument on the merits of the underlying action. Shawn and Christopher confirmed their prior positions regarding the Boonton Property. On June 10, 2022, the second trial court issued an order, with an accompanying statement of reasons, denying without prejudice both plaintiff's motion for ejectment and rent and Shawn and Diane's motion for partial summary judgment. The order established a sealed bidding procedure and time frames by which Shawn and Christopher could submit bids to the Surrogate's Office to purchase the Boonton Property.

A-2187-23

In accordance with this process, Shawn and Christopher submitted timely bids. Shawn made an offer of $501,000, and Christopher made an offer of $601,000. However, plaintiff alerted Shawn and the court that she sought to purchase the Boonton Property with Christopher, to which Shawn objected. In response to a motion filed by Shawn and Diane, on August 31, 2022, the second trial court entered an order, clarifying that Christopher must purchase the Boonton Property individually by September 15, 2022, or the winning bid would revert to Shawn and Diane. Christopher alone was able to effectuate the purchase of the Boonton Property by September 15, 2022. However, Shawn and Diane did not vacate the Property.

Plaintiff, in her role as Trustee, filed a motion seeking the removal of Shawn and Diane from the Boonton Property. On October 12, 2022, the second trial court entered an order, again with an accompanying statement of reasons, directing Shawn and Diane to vacate the Property on or before December 1, 2022. The second trial court scheduled a plenary hearing on December 6 and December 14, 2023 to resolve the outstanding issues of unpaid rent with respect to the Boonton Property and counsel fees incurred by plaintiff. Shawn and Diane vacated the Boonton Property on November 28, 2022.

9

After purchasing the Boonton Property, Christopher admitted that he never moved into the Property. Instead, he sold it on September 15, 2022 and on December 20, 2022, deeded it to the prior tenants, who had made a prior offer to purchase of $800,000.

Before the plenary hearing in December 2023, Shawn and Diane filed five motions seeking to: (1) file a supplemental complaint; (2) file a second supplemental complaint and for the Trustee's suspension; (3) reconsider the May 10, 2022 orders denying the filing of supplemental complaints and the June 10, 2022 order denying partial summary judgment; (4) establish "controlling law" for the upcoming plenary hearing; and (5) allege due process violations. The second trial court denied all relief sought. In addition, Shawn and Diane filed a motion for leave to appeal, which was also denied.

Plaintiff served two frivolous litigation notices on Shawn and Diane. The first notice, dated April 26, 2023, was in response to their motion to file a second supplemental complaint and for suspension of the Trustee. The second notice, dated August 30, 2023, was in response to the motion for due process violation and relief and of their counterclaim. Both notices, citing to Rule 1:4-8(b), advised Shawn and Diane of plaintiff's intent to move for sanctions unless the specified pleadings were withdrawn.

The plenary hearing occurred as scheduled on December 6 and December 14, 2023. On February 14, 2024, the second trial court issued a comprehensive written decision, finding plaintiff satisfied her burden of proof with respect to rental payments owed by Shawn and Diane for the Boonton Property, totaling $2,500 for their occupancy of the Property after decedent's death; and plaintiff demonstrated an entitlement to an award of attorney's fees pursuant to Rule 1:4-8(b) with respect to two motions: (1) seeking to file a second amended complaint; and (2) alleging due process violations. On March 6, 2024, plaintiff's counsel submitted a certification of services, and thereafter, the second trial court issued an order awarding counsel fees in the amount of $8,024.92. Shawn and Diane did not challenge the reasonableness of the fees sought. This appeal followed.

On appeal, Shawn and Diane raise seven points for our consideration, alleging the second trial court erred by: (1) not enforcing the January 25, 2022 order directing a settlement conference; (2) violating defendants' due process rights; (3) overlooking controlling law regarding trust interpretation; (4) reforming the Trust without clear and convincing evidence; (5) denying leave to file supplemental complaints; (6) awarding sanctions for frivolous litigation; and (7) overlooking new evidence supporting Shawn and Diane's claims.

11

Factual findings made by a trial court after a plenary hearing are entitled to deference and are binding on appeal provided those findings are supported by adequate, substantial, credible evidence. Gnall v. Gnall, 222 N.J. 414, 428 (2015) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). However, no such deference is owed to "[a] trial court's interpretation of the law and the legal consequences that flow from established facts . . . ." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A trial court's decision to grant or deny a motion to amend the complaint is reviewed for abuse of discretion. Port Liberte II Condo. Ass'n, Inc. v. New Liberty Residential Urb. Renewal Co., LLC, 435 N.J. Super. 51, 62 (App. Div. 2014); see also Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 457 (1998). A trial court's decision on a motion for frivolous lawsuit sanctions is also reviewed under an abuse of discretion standard. McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 498 (App. Div. 2011) (citing DeBrango v. Summit Bancorp., 328 N.J. Super. 219, 229 (App. Div. 2000)).

A. Enforcement of Prior Interlocutory Order.

A-2187-23

Shawn and Diane contend that the second trial court erred by not requiring the parties to attend a settlement conference as ordered by the first trial court on January 25, 2022, and instead, directing the parties to proceed with a sealed bidding process for the Boonton Property. Shawn and Diane argue the second trial court failed to adhere to the "principle of judicial continuity . . . ." This argument fails for four reasons.

First, the January 25, 2022 order was an interlocutory order, which was subject to review and revision at any time. R. 4:42-2(b). Interlocutory rulings, when procedural issues arise, are "always subject to reconsideration up until final judgment is entered." Lombardi v. Masso, 207 N.J. 517, 539 (2011) (citing Johnson v. Cyklop Strapping Corp., 220 N.J. Super. 250, 257 (App. Div. 1987)). The second trial court discerned early on that the parties were "unable to agree on [any] detail relating to the sale of the [Boonton] Property." A trial court can encourage parties to engage in settlement discussions. A trial court, however, cannot compel parties to settle a matter.

Second, Shawn and Diane do not cite to any legal authority regarding the principle of "judicial continuity . . . ." They seem to contend that the second trial court violated the law of the case doctrine. The law of the case doctrine is a discretionary, non-binding rule aimed at avoiding "relitigation of a previously

resolved issue." Id. at 538 (quoting In re Est. of Stockdale, 196 N.J. 275, 311 (2008)). "[The] doctrine is only triggered when one [trial] court is faced with a ruling on the merits by a different and co-equal [trial] court on an identical issue." Id. at 539. This principle does not apply here because the provision regarding a settlement conference was not the result of a ruling on the merits of any issue.

Shawn and Diane filed various motions during the litigation. Yet, they did not specifically request enforcement of the provision regarding a settlement conference. Nor does the record contain any indication that the parties informally conducted any settlement negotiations amongst themselves.[2]

Finally, and most importantly, the second trial court was well within its discretion to order a sealed bidding process as the most efficient, expeditious, and equitable process for resolving the dispute as to how the Boonton Property would be sold. Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 514 (2019) (holding that a court of equity has considerable discretion, applying equitable principles, to fashion a remedy). The parties were on notice from the

---

[2] Plaintiff's counsel represented to the second trial court at the May 27, 2022 hearing that the parties were scheduled for a settlement conference with Christopher Luongo, Esq., Deputy Surrogate, on June 1, 2022. However, the record does not indicate that this conference took place.

January 25, 2022 hearing before the first trial court regarding the potential for such a process as a means to sell the Boonton Property. Additionally, as set forth in the May 27, 2022 order, the parties were given further notice that the second trial court intended to hear argument on the merits of the underlying action and intended to direct the parties on how they would proceed with the sale of the Boonton Property. We discern no abuse of the second trial court's discretion in imposing a sealed bidding process to resolve the dispute as to who would purchase the Boonton Property.

B. Alleged Due Process Violations and Denial of Motion to File Supplemental Complaints.

Shawn and Diane claim both trial courts violated their rights to due process by failing to give them proper notice of relief being sought and erred by not allowing them to file supplemental complaints. Regarding the due process violations, Shawn and Diane claim they were not given adequate notice prior to the issuance of the June 10, 2022 order, directing the sale of the Florida Property to plaintiff by August 18, 2022 for $360,000—the appraised fair market value; and directing Shawn and Christopher to participate in a sealed bidding process. According to Shawn and Diane, this relief was not requested by them; thus, they were not given adequate notice in accordance with procedural rules of this potential relief. They also argue that the second trial court erred in not

permitting them to file supplemental complaints.  Neither of these contentions have merit in light of the extensive record in this case demonstrating adequate notice, opportunity to be heard and detailed written statements of reasons, pursuant to Rule 1:7-4(a), accompanying the second trial court's orders.

As noted above, Shawn and Diane had adequate notice of the potential for a sealed bidding process as early as the January 2022 hearing, and more than sufficient opportunity to be heard on the merits.  Moreover, the second trial court acted within its discretion to fashion a remedy resolving the dispute before it by ordering a sealed bidding process.  Shawn raised the issue of a potential due process violation at the June 28, 2023 hearing, contending that he had been deprived of a meaningful opportunity to be heard, which the second trial court rightfully rejected.  At this juncture, the record reflects that five hearings were held, and during each hearing, Shawn was given an opportunity to address the trial courts at length.

Concerning the claim that the second trial court erred by not permitting the filing of supplemental complaints, these pleadings repeated allegations of plaintiff's breach of fiduciary duty as Trustee in the sale of both the Boonton and Florida Properties and in misappropriating Trust Funds, and Christopher's wrongful acts, which resulted in the diversion of Trust Property and unjust

16

enrichment. Shawn and Diane urge us to reverse the two orders entered on May 10, 2023, denying their motions to file supplemental complaints. We discern no abuse of discretion in the second trial court's detailed statements of reasons attached to these orders.

"Judges retain the inherent authority to impose reasonable conditions on motion practice to allow for appropriate case management and the efficient and effective administration of the case." Zehl v. City of Elizabeth Bd. of Educ., 426 N.J. Super. 129, 141 (App. Div. 2012). Such discretion includes granting or denying leave to file a supplemental complaint when a claim arises during the pendency of the litigation. R. 4:9-4.

Rule 4:9-4 provides that, "[o]n motion by a party the [trial] court may, upon reasonable notice and on terms, permit that party to serve a supplemental pleading setting forth transactions or occurrences which took place after the date of the pleading sought to be supplemented." "[I]f, during the pendency of the litigation, a claim arises which is part of the entire controversy, the claimant must seek leave pursuant to R[ule] 4:9-4 to file a supplemental pleading." Brown v. Brown, 208 N.J. Super. 372, 381-82 (App. Div. 1986). Recognizing that leave to file supplemental pleadings should be freely granted, such decisions "are best left to the sound discretion of the trial court in light of the factual

17

situation existing at the time each motion is made." Fisher v. Yates, 270 N.J. Super. 458, 467 (App. Div. 1994) (citing R. 4:9-1).

Here, the second trial court delineated its reasons for denying the filing of the first and second supplemental complaints, explaining that the some of the claims alleging misconduct by plaintiff arose prior to the filing of Shawn and Diane's initial pleadings and have already been raised. In fact, in various pleadings, Shawn and Diane had sought to remove plaintiff as Trustee for breach of her duties.

In the second supplemental complaint, Shawn and Diane sought to raise a claim regarding plaintiff's breach of her fiduciary duty by purchasing the Florida Property for $360,000, which was the date-of-death fair market value appraisal of the Property. The second trial court found this claim unsupported because the first trial court had ordered the appraisal, which resulted in the purchase price.

As for the misconduct claim concerning Christopher purchasing the Boonton Property and then "flipping" it for a profit, this contention was addressed by the second trial court in the statement of reasons attached to the September 13, 2022 order. The second trial court correctly noted that the owner of the Boonton Property "is permitted to occupy and/or sell the home[,] and the

Trust places no restrictions on how the owner may or may not dispose of the Boonton Property." Again, there was no support in the record for this claim.

C. <u>Controlling Law as to the Trust Interpretation.</u>

Shawn and Diane contend that the second trial court incorrectly interpreted the language of the Trust and then reformed it. They further argue that the second trial court incorrectly interpreted the term "fair market value" and misinterpreted the Trust's property purchase provision.

"The [trial] court's primary goal in interpreting a trust agreement is to fulfill the settlor's intent." <u>Matter of Tr. of Nelson</u>, 454 N.J. Super. 151, 158 (App. Div. 2018). "[T]he goal always is the ascertainment of the testator's intent and it is not to be thwarted by unduly stressing the literal meaning of his words." <u>Ibid.</u> (alteration in original) (quoting <u>Fidelity Union Tr. Co. v. Robert</u>, 36 N.J. 561, 565 (1962)). "[I]n ascertaining intent, [the trial court's] focus really is probable intent." <u>Ibid.</u> However, the trial court "should not tolerate interpreting a trust to provide benefits the settlor did not intend." <u>Id.</u> at 163. Interpreting a trust requires an examination of the instrument itself, as well as the "surrounding facts and circumstances." <u>Robert</u>, 36 N.J. at 564-65.

Shawn and Diane acknowledged at various times throughout the litigation that the dispositive provisions of the Trust are straightforward. Indeed, the Trust

delineates three relevant and straightforward provisions: (1) the Trust's assets are to be divided equally among the three beneficiaries; (2) Shawn and Christopher have the power to purchase plaintiff's share of the Boonton Property; and (3) plaintiff has the power to purchase Shawn and Christopher's shares of the Florida Property.

To determine the value of the two properties, a date-of-death appraisal was ordered by the first trial court. None of the parties objected to these appraisals as set forth in the January 25, 2022 order. Moreover, Shawn and Diane had requested date-of-death appraisals for the properties. The value of a decedent's assets is routinely determined by the value of the property at the time of death. Est. of Warshaw v. Dir., Div. of Tax'n, 27 N.J. Tax 287, 292 (Tax 2013). As Shawn and Diane acknowledge, fair market value is defined as what a willing buyer would pay a willing seller. Ibid. (citing 26 C.F.R. § 20.2031-1(b) (2013)). Thus, the first trial court correctly ordered the date-of-death appraisals for both properties to establish their fair market value as of decedent's death.

Second, Shawn and Diane's position regarding the interpretation of the Trust language has changed over time as it relates to the purchase provision of the Trust. Initially, Shawn represented to the first trial court the decedent's

testamentary intent was he and Christopher receive the Boonton Property, and that "it was bequeathed at a fair market value price . . . ." However, Shawn's position changed, and he asserted that the Trustee was under a duty to first convey the properties to all three beneficiaries, and only after the properties were deeded to the beneficiaries, would they have the "power to purchase" each other's "shares." Shawn argues that the Trustee and the second trial court disregarded this interpretation.

This more recent interpretation belies common sense. The remedy the second trial court fashioned was consistent with decedent's clear intent that both his sons have an equal right to purchase plaintiff's share of the Boonton Property and either one or both together could purchase the Property. The second trial court's remedy was consistent with this interpretation and carried out decedent's testamentary intent. Thus, we discern no error.

D. Alleged Reformation of the Trust.

"[R]eformation involves remaking or modifying an instrument, to correct mistakes, to fulfill an unexpressed intention, or to address circumstances that were unforeseen." Nelson, 454 N.J. Super. at 160 (citing Uniform Trust Code, cmt. to § 415 (2000)). Reformation is more impactful than interpretation, which is clear based on the differing standards of proof. "The preponderance-of-the-

evidence standard of proof applies to interpretation; however, the more rigorous clear-and-convincing standard of proof applies to reformation." Ibid.

Shawn and Diane contend that the second trial court reformed the Trust language concerning the property purchase provisions without an evidentiary hearing. Specifically, they assert that the second trial court reformed the Trust language in paragraph 4.1(A)(a), which permitted Shawn and Christopher "the power to purchase their sister's share of [the Boonton Property] at the then fair market value," to granting Shawn and Christopher, "individually and not jointly, the power to purchase the entire Boonton Property in accordance with a sealed bidding procedure."

There is no support in the record or in the second trial court's comprehensive decision to suggest that the court reformed the Trust in any respect. Rather, the second trial court interpreted the Trust language to effectuate decedent's intent and ordered the bidding procedure as an equitable remedy to carry out the donor's intent.

E. Award of Sanctions for Frivolous Litigation.

Shawn and Diane assert that the second trial court's decision to impose sanctions "constitutes an error of both discretionary and legal considerations." Because plaintiff did not file a formal motion seeking sanctions, Shawn and

22

Diane argue the second trial court imposed sanctions on its own initiative and was required to follow the procedure for doing so set forth in Rule 1:4-8(c), which governs the imposition of sanctions on the trial court's initiative.

In its statement of reasons, the second trial court stated, one of the two issues to be determined at the plenary hearing was plaintiff's application for attorney's fees "for the work performed to eject [Shawn and Diane] from the Boonton Property, as well as attorney['s] fees for [d]efendant[s]'s frivolous motions filed in 2023." After the two-day hearing, the second trial court determined that plaintiff had established an entitlement to an award of attorney's fees regarding the filing of two motions deemed frivolous pursuant to Rule 1:4-8(a): (1) motion to file a second amended complaint; and (2) motion finding due process violations. In plaintiff counsel's February 8, 2024 supplemental certification of legal services, counsel certified that plaintiff "seeks to file a motion pursuant to R[ule] 1:4-8 based on two frivolous litigation notices" concerning these two motions. However, the record does not contain any such motion.

An application for sanctions pursuant to New Jersey's Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1, is brought pursuant to Rule 1:4-8(b), which governs sanctions. "The sanctions for frivolous litigation apply when an

23

attorney or pro se party has violated Rule 1:4-8[(a)] by presenting papers for an 'improper purpose' or asserting claims or defenses that lack the legal or evidential support . . . Rule 1:4-8[(a)] requires." State v. Franklin Sav. Acct. No. 2067, 389 N.J. Super. 272, 281 (2006) (quoting R. 1:4-8(b)(1)(i) to (ii)).

The Rule requires that an application for sanctions "shall be by motion made separately from other applications and shall describe the specific conduct alleged to have violated this rule." R. 1:4-8(b)(1); Toll Bros., Inc v. Twp. of W. Windsor, 190 N.J. 61, 69 (2007) ("A litigant seeking sanctions under the Rule must file a separate motion[.]"). Before the filing of a motion for sanctions, "the aggrieved litigant must provide the attorney or pro se party with a procedural 'safe harbor[,]'" which "serves as a warning that the litigant will apply for sanctions 'if the offending paper is not withdrawn . . . .'" Toll Bros., Inc, 190 N.J. at 69 (quoting R. 1:4-8(b)(1)).

If the motion is not withdrawn, Rule 1:4-8(b)(2) permits the filing of a motion for sanctions within twenty days after the entry of final judgment. The Rule defines "final judgment" to "include any order deciding a post-judgment motion whether or not that order is directly appealable." R. 1:4-8(b)(2). Rule 1:4-8(c) provides for an order for sanctions on the trial court's initiative and

provides the process by which notice is to be provided to the party or attorney against whom sanctions are sought.

The "parameters of this <u>Rule</u>" are generally strictly applied. <u>LoBiondo v. Schwartz</u>, 199 N.J. 62, 99 (2009); <u>Tagayun v. AmeriChoice of N.J., Inc.</u>, 446 N.J. Super. 570, 579 (App. Div. 2016). N.J.S.A. 2A:15-59.1 requires "that the party seeking sanctions must file an independent motion or application, separate from any substantive motion that party files." <u>Marenbach v. City of Margate</u>, 942 F. Supp. 2d 488, 496 (D.N.J. 2013). "The term frivolous should not be employed broadly or it could limit access to the court system." <u>Tagayun</u>, 446 N.J. Super. at 580 (citing <u>First Atl. Fed. Credit Union v. Perez</u>, 391 N.J. Super. 419, 432-33 (App. Div. 2007)). Further, the trial court's analysis and the opposing party's response may vary depending on the motion and supporting certification submitted consistent with the requirements of <u>Rule</u> 1:4-8(b)(1).

Here, following this procedure, plaintiff served two notices on Shawn and Diane pursuant to N.J.S.A. 2A:15-59.1(a) and (b) and <u>Rule</u> 1:4-8(b), demanding that the motions be withdrawn or "the Trustee shall file a motion seeking sanctions against you on motion to the [c]ourt." The first notice, dated April 26, 2023, was in reference to Shawn and Diane's motion for leave to file a Second Supplemental Complaint and for Trustee Suspension returnable on May 10,

2023; and the second notice, dated August 30, 2023, was in reference to their Notice of Motion for Due Process Violation and Relief returnable on September 13, 2023. These notices detailed the basis for plaintiff's assertion that the motions were without merit and should be deemed frivolous. Shawn and Diane, however, did not withdraw these pleadings, and ultimately, the second trial court denied their respective motions.

However, plaintiff never followed through by filing formal notices of motion seeking sanctions pursuant to the frivolous litigation statute. Rather, Shawn and Diane were advised by the second trial court that attorney's fees, in part based on the frivolous motions, would be addressed at the plenary hearing scheduled in December 2023. Shawn was also questioned during the hearing as to the basis for the filing of these two motions.

The process required by Rule 1:4-8(b) was not followed in this case. Thus, the procedural requirements of Rule 1:4-8(b) were not met. We are constrained to remand on this limited issue for the second trial court to consider anew the application for attorneys' fees under either Rule 1:4-8(b), if the appropriate notice of motion is filed, or under Rule 4:42-9(a)[3] if applicable.

---

[3] Rule 4:42-9(a) delineates the types of actions in which fees for legal services may be awarded.

F. New Evidence.

Shawn and Diane contend that the second trial court overlooked new evidence supporting their claims against plaintiff for breach of fiduciary duty. However, they fail to identify specifically the new evidence they assert the second trial court overlooked. Rather, the arguments characterized as "new evidence" merely reiterate those previously asserted. This argument lacks sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

In sum, we conclude the second trial court did not err in establishing the sealed bidding process to effectuate decedent's intent. We affirm the interlocutory orders, including the June 10, 2022, August 31, 2022, and May 10, 2023 orders, holding that the record does not support Shawn and Diane's claims that their due process rights during the pendency of the litigation were violated or that the second trial court abused its discretion in denying their motion to file supplemental pleadings. Based on our de novo review, we discern no legal error in the second trial court's interpretation and application of the governing law, nor did the second trial court reform the Trust. However, because the procedural requirements of Rule 1:4-8(b) regarding the imposition of frivolous litigation sanctions were not followed, we vacate and reverse the provision of the

27

February 14, 2024 order pertaining to the award of attorney's fees as sanctions and remand for the second trial court to consider this issue anew consistent with this opinion.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division