**NOT FOR PUBLICATION WITHOUT THE APPROVAL**
**OF THE TAX COURT COMMITTEE ON OPINIONS**

-------------------------------------------------------x

| | | |
|---|---|---|
| SECAUCUS NEWS INC., | : | TAX COURT OF NEW JERSEY |
| | : | DOCKET NO.: 010530-2022 |
| Plaintiff, | : | |
| | : | |
| v. | : | <u>Civil Action</u> |
| | : | |
| DIRECTOR, DIVISION OF TAXATION, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------x

Decided: May 29, 2026

Guvenc Acarkan for plaintiff
(Law Offices of Guvenc Acarkan, attorney).

Timothy M. Kawira, Deputy Attorney General for defendant
(Jennifer Davenport, Attorney General of New Jersey, attorney).

NOVIN, J.T.C.

This shall constitute the court's opinion on the defendant, Director, Division of Taxation's (Director) motion for summary judgment. At issue is whether plaintiff taxpayer, Secaucus News Inc. (plaintiff) maintained adequate business records to establish its actual sales and receipts and thus, verify its self-assessed tax liabilities.

For the reasons stated more fully below, the court grants the Director's motion for summary judgment.

## I.  **Findings of Fact and Procedural History**

Pursuant to R. 1:7-4(a), the court makes the following factual findings and conclusions of law based on its review of the pleadings, the undisputed material facts, and the parties' exhibits.

During the tax years at issue, plaintiff operated a small convenience store/candy store at 1504 Paterson Plank Road, Secaucus, New Jersey. Plaintiff sold breakfast rolls, beverages, candy, chips, cigarettes, minimal dairy products, newspapers, and New Jersey lottery tickets. The

1

business was open seven days a week and had no on-site parking. Plaintiff was owned and operated by Jayesh Majmundar (Jayesh) and Chandravadan Majmundar (C.P.) (Jayesh and C.P. shall be collectively referred to herein as the shareholders). Jayesh and C.P. each owned a fifty percent interest in the plaintiff.

On or about June 9, 2015, the Director began an audit of the plaintiff. The audit included Corporation Business Tax, N.J.S.A. 54:10A-1 to -41 (CBT), for the period January 1, 2011 through December 31, 2014; Gross Income Tax – Employer Withholding, N.J.S.A. 54A:7-1 to -7 (GIT-ER), for the period January 1, 2013 through December 31, 2015; and Sales and Use Tax, N.J.S.A. 54:32B-1 to -29 (SUT), for the period of January 1, 2012 through December 31, 2015.

On March 24, 2016, the auditor conducted a pre-audit meeting with plaintiff. However, plaintiff was unable to complete the pre-audit questionnaire at that time because only C.P. was available. Jayesh, who apparently handled the business activities, was unavailable to meet.

On April 11, 2016, the auditor issued plaintiff an Information Document Request (First IDR). The First IDR sought plaintiff to produce the following business records: (i) General Ledger for 2014; (ii) Profit and Loss Statements or Trial Balances for 2011 through 2015; (iii) a copy of the 2015 Corporate Business Tax Return; (iv) bank statements for 2011 through 2015 with check images or cancelled checks; (v) W-2's and N.J. W-3's with payroll summaries for 2013 through 2015; (vi) depreciation schedules for the period January 2012 through December 2015; (vii) cash register tape for sales from October 2015 through December 2015; (viii) sales journal for period January 2012 through December 2015; (ix) purchases vendor invoices for 2014; (x) cash payout invoices for 2014; (xi) current purchases vendor invoices for the period November 2015 through December 2015. The First IDR additionally stated, "[t]his list is not inclusive and additional information may be required throughout the course of the audit."

On April 17, 2018, the auditor issued plaintiff a second Information Document Request

(Second IDR). The Second IDR sought plaintiff to produce the following business records: (i) General Ledger for 2014; (ii) Profit and Loss Statements or Trial Balances for 2011 through 2015 (iii) bank statements for 2011 through 2015 with check images or cancelled checks; (iv) W-2's and N.J. W-3's with payroll summaries for 2013 through 2015; (v) depreciation schedules for period January 2012 through December 2015; (vi) cash register tape for sales from October 2015 through December 2015; (vii) sales journal for period January 2012 through December 2015; (viii) purchases vendor invoices for 2014; (ix) cash payout invoices for 2014; (x) current purchases vendor invoices for the period November 2015 through December 2015.

On September 6, 2018, the auditor met with Jayesh and plaintiff completed the pre-audit questionnaire. The plaintiff reported that the following business records were available: General Ledger, Sales Journal, NJ/Federal 1040's, NJ CBT 100's, depreciation/fixed assets schedule, vendor bills, bank statements, cancelled checks, payroll records/journals, and cash payout records.

On September 6, 2018, Jayesh provided the auditor with partial information related to four of the ten categories of business records requested under the First IDR and Second IDR. The partial documents that were provided included: (i) a Profit and Loss Statement or Trial Balance for the 2014 tax year; (ii) bank statements with images or cancelled checks for portions of 2014 and 2015; (iii) purchase vendor invoices for 2014; and (iv) cash payout invoices for 2014.

On October 19, 2018, the auditor also issued plaintiff a third Information Document Request (Third IDR). The Third IDR sought plaintiff to produce the following: (i) General Ledger for 2014; (ii) Profit and Loss Statements or Trial Balances for 2011, 2012, 2013, and 2015; (iii) the missing bank statements for 2011 through 2015 with images or cancelled checks; (iv) W-2's and N.J. W-3's with payroll summaries for 2013 through 2015; (v) a depreciation schedule for January 2012 through December 2015; (vi) register tape sales for October 2015 through December 2015; (vi) the sales journal for January 2012 through December 2015; (vii) purchases vendor

3

invoices for 2014; (viii) cash payout invoices for 2014;[1] (ix) current purchases vendor invoices for November through December 2015; and (x) Form 1099-K statements for all merchandise credit card accounts.

On or about January 30, 2019, plaintiff furnished the auditor with the missing 2014 bank statements. However, plaintiff did not provide the auditor with images of the cancelled checks.

According to the auditor, she did not receive the following business records from the plaintiff: (i) a General Ledger for 2014; (ii) Profit and Loss Statements or Trial Balances for 2011, 2012, 2013, and 2015; (iii) a copy of plaintiff's 2015 CBT return;[2] (iv) bank statements for 2011, 2012, and 2013 with images of cancelled checks; (v) W-2's and N.J. W-3's with payroll summaries for 2013, 2014, and 2015; (vi) a depreciation schedule for January 2012 through December 2015; (vii) register tape sales for October 2015 through December 2015; (vii) the sales journal for January 2012 through December 2015; (viii) current purchase vendor invoices for November through December 2015; and (ix) 1099-K's for all merchandise credit card accounts.

On February 15, 2019, the auditor advised plaintiff that an indirect audit method[3] would be conducted because she determined that insufficient business and financial records were available to conduct a mark-on analysis.[4]

In conducting the audit, the auditor reconciled plaintiff's gross receipts for tax years 2014

---

[1] The auditor's Second IDR reflected that cash payout invoices for 2014 were received on September 6, 2018.

[2] The court's review of the auditor's work file reveals the notation that on December 27, 2017, the auditor "[p]rinted CBT 2015 and 2016." Accordingly, the court does not find that plaintiff failed to produce a copy of its 2015 CBT return.

[3] When a taxpayer's records are inadequate or insufficient to verify reported income, an auditor may perform an indirect method audit. The indirect method attempts to reconstruct the taxpayer's income and receipts based on an analysis of a taxpayer's business records, including bank statements and bank deposits (bank deposit analysis), or a comparison of the sales price and cost of goods sold by the taxpayer (mark-on analysis). See La Troncal Food Corp. v. Dir., Div. of Tax'n, 33 N.J. Tax 435, 456 (Tax 2024).

[4] The plaintiff disputes the auditor's conclusion that an indirect audit method was required. However, the plaintiff does not dispute that the auditor communicated this conclusion to plaintiff.

4

through 2015 using ST-50's, Corporate Business Tax filings, and bank deposits. However, upon reviewing that information, the auditor found "unverified discrepancies" and therefore, did not accept plaintiff's reported gross receipts. The auditor then attempted to reconcile plaintiff's purchases or cost of goods sold (COGS) for the 2014 tax year "because the majority of the information necessary to reconcile purchases was available for that year." The auditor reviewed plaintiff's 2014 purchase invoices, available third-party information, and the reported purchases on plaintiff's 2014 CBT return. However, upon completing the reconciliation the auditor found that plaintiff's "reported purchases for 2014 were underreported," thus the auditor rejected plaintiff's purchases as filed.[5] Thus, the auditor prepared estimated assessments.

For the audit years 2011 to 2014, the auditor applied an estimated CBT assessment of $2,500 per year, plus interest, and penalties.

For the audit years 2013 to 2015, the auditor applied an estimated GIT-ER assessment of $1,500 per year, plus interest, and penalties.

For the audit period January 1, 2012 to December 31, 2015, the auditor applied an estimated SUT assessment of $75,000, plus interest, and penalties.[6]

On May 8, 2019, the Director issued plaintiff a Notice of Assessment Related to the Final Audit Determination (Notice of Assessment). The Notice of Assessment informed plaintiff that after accounting for all payments and credits, there was a remaining balance due totaling $126,373.55, inclusive of penalties and interest. The Notice of Assessment afforded plaintiff ninety days to file an administrative protest with the Director's Conference and Appeals Branch

---

[5] According to the auditor, she did not reconcile plaintiff's purchases for 2011, 2012, 2013, and 2015 because third-party information was available for those years for only five vendors out of the fifteen purchase vendors identified for the 2014 year.

[6] The court notes that the Schedule of Liabilities annexed to the Director's Notice of Assessment, Responsible Person Notices, and Final Determination letter (as such terms are defined herein), reflects an SUT assessment of $71,031.28.

(CAB), or to file an appeal with the Tax Court.

On August 1, 2019, plaintiff submitted a protest and requested an informal administrative conference with CAB.

On January 17, 2020, the Director issued Notices of Finding of Responsible Person Status to Jayesh and C.P. (Responsible Person Notices). The Responsible Person Notices advised the shareholders that they are "responsible for paying any part of the trust fund taxes . . . which the above[-]named business failed to pay." The Responsible Person Notices afforded the shareholders ninety days to file an administrative protest or an appeal with the Tax Court.

On May 19, 2022, a conference was conducted with plaintiff's representative and CAB.

On July 6, 2022, the Director issued plaintiff a Final Determination letter ("Final Determination letter"). The Final Determination letter stated that because the plaintiff did not provide "Register Tape sales for October 2015 to December 2015[;] Sales Journal for January 2012 to December 2015[; and] Current Purchases vendor invoices for November to December 2015," the audit assessment was upheld. The Final Determination letter further recited that,

> [u]nder N.J.A.C. 18:24-2.3(a), A true copy of all sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks issued to any customer by a seller who is required to be registered pursuant to the provisions of the Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. and records of every purchase, both retail and wholesale, must be available for inspection and examination at any time upon demand by the Director or his or her duly authorized agent or employee and shall be preserved for a period of four years from the filing date of the quarterly period for the filing of sales tax returns to which such records pertain.

On October 11, 2022, the plaintiff filed a complaint with the Tax Court challenging the Final Determination letter.

On March 20, 2026, the Director filed the instant motion for summary judgment. On April 24, 2026, plaintiff filed opposition. On May 7, 2026, the Director filed a reply.

6

## II. Conclusions of Law

### A. Summary Judgment

Summary judgment "'serve[s] two competing jurisprudential philosophies': first, 'the desire to afford every litigant who has a bona fide cause of action or defense the opportunity to fully expose his case,' and second, to guard 'against groundless claims and frivolous defenses,' thus saving the resources of the parties and the court." Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 541-42 (1995)).

R. 4:46-2 outlines the circumstances under which summary judgment should be granted:

> if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
>
> [R. 4:46-2(c).]

In Brill, our Supreme Court explained that "the essence of the inquiry [is] whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." 142 N.J. at 536 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). In conducting this inquiry, the trial court must engage in a "kind of weighing that involves a type of evaluation, analysis and sifting of evidential materials." Ibid. The standard established by our Supreme Court in Brill is as follows:

> [W]hen deciding a motion for summary judgment under R. 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential material presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the non-moving party.
>
> [Ibid.]

In considering the material evidence before it with which to determine if there is a genuine

7

issue of material fact, the court must view most favorably those items presented to it by the party opposing the motion and all doubts are to be resolved against the movant. Ruvolo v. American Casualty Co., 39 N.J. 490, 491 (1963). Thus, denial of summary judgment is appropriate when the evidence presented by the non-moving party is of such a quality and quantity that reasonable minds could return a finding favorable to the party opposing the motion. Id. at 540. "By its plain language, R. 4:46-2 dictates that a court should deny a summary judgment motion only where a party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" Id. at 529. However, summary judgment may not be denied simply because the non-movant demonstrates the existence of a disputed fact. Id. at 540-41. When the party opposing the motion merely presents "facts which are immaterial or of an insubstantial nature, a mere scintilla, fanciful, frivolous, gauzy or merely suspicious," then an otherwise meritorious application for summary judgment should not be defeated. Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 75 (1954). Hence, "when the evidence is so one-sided that one party must prevail as a matter of law. . . the trial court should not hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting *Anderson,* 477 U.S. at 252).

Having reviewed the pleadings, certifications, and undisputed statements of material fact, the court concludes that no genuine issues of material fact are in dispute. Rather, these matters involve an application of law to the undisputed facts contained in the motion record, and thus, are ripe for summary judgment.

B.    Legal Arguments Presented

In support of its motion for summary judgment, the Director argues that plaintiff has "failed to provide significant requested records." The Director asserts that plaintiff's "failure to maintain all records used to determine the tax liabilities during the tax years at issue . . . runs afoul of the express record retention requirements of the . . . state statutes and regulations." The Director

maintains that plaintiff failed to provide "register tape sales for October 2015 through December 2015 and the sales journal for January 2012 through December 2015," including "other fundamental documentation such as bank statement images/cancelled checks, W-2s/NJ W-3s with payroll summaries, and current purchases vendor invoices for November through December 2015." Thus, the Director emphasizes that the estimated SUT assessments became necessary because the plaintiff has "failed to provide sufficient information to . . . conduct a mark-on analysis."

In addition, the Director contends that plaintiff has "failed to provide . . . foundational records" to enable the auditor "to conduct a proper examination" to ascertain its CBT liability. Similarly, the Director asserts that it "repeatedly requested payroll-related records necessary to verify withholding compliance, including W-2[']s and NJ W-3[']s with payroll summaries for 2013 through 2015." However, plaintiff has "failed to produce those records." In sum, the Director maintains that, since plaintiff failed to maintain and produce sufficient books and business records, the Director is entitled to impose estimated assessments based upon available information, and that such assessments are presumed correct.

In response to the motion for summary judgment, plaintiff argues that it "identified and made available categories of financial documentation thereby directly contradicting the Director's position that [p]laintiff failed to maintain or produce sufficient records." The plaintiff concedes that "some records were incomplete or unavailable" and "certain records may not have been produced in complete form." However, it asserts that the information and documents made available to the Director were "sufficient to reflect business activity" and "to reconstruct plaintiff's financial activity using a reasonable methodology." Plaintiff submits that it "utilized those materials to perform a detailed reconstruction of its books and records." Plaintiff claims that the methodology employed by the Director "treated gross bank deposits as a proxy for taxable sales,

9

without accounting for the undisputed fact that those deposits included non-income items such as cash receipts for the ATM cash machine located on [p]laintiff's premises." In sum, plaintiff charges that the auditor's conclusion that plaintiff maintained insufficient business records was improper and that the Director's audit methodology is unreliable. Plaintiff offers what it identifies as an "expert report" or "expert analysis" to attempt to demonstrate the alleged disparity between the Director's tax assessments and plaintiff's reconstructed tax liability.[7]

In reply, the Director argues that plaintiff has not offered sufficient credible evidence to rebut the presumption of correctness or to establish a genuine issue of material fact. The Director asserts that the plaintiff has failed to provide "the records needed to verity actual taxable sales . . . ," thus, the SUT was not overstated. In addition, the auditor was unable to reconcile the COGS because plaintiff's evidence exposed underreported purchases. The Director further maintains that the GIT-ER was not overstated because plaintiff failed to provide, "the payroll source records needed."[8] Finally, the Director argues that plaintiff's "expert report" is inadmissible hearsay because "it is presented without any certification as to its authenticity or accuracy."

Thus, the issues presented to this court for disposition are: (1) whether plaintiff maintained the business records mandated under N.J.S.A. 54:32B-16, N.J.S.A. 54:32B-24(5), and N.J.A.C. 18:24-2.3(a) to -2.5; and (2) if plaintiff maintained "insufficient" business records, were the Director's estimated tax assessments aberrant, arbitrary, or capricious.

---

[7] The "expert report" contends that plaintiff should have been treated as a New Jersey S-Corporation and taxed under the S-Corporation minimum-tax schedule because the plaintiff's 2012 tax return indicated that it was an "initial S-filer." The report's author "assume[s] that the State of New Jersey recognizes that Secaucus News, Inc. does have S-Corporation status in the State of New Jersey." However, none of these arguments were advanced under plaintiff's motion or briefs.
[8] The Director maintains that plaintiff should not be taxed as a New Jersey S-Corporation because the evidence provided by plaintiff "does not establish that it was accepted as a New Jersey S-[C]orporation filer. . . ."

10

C.    Analysis

1.    Assessment of tax

The State Uniform Tax Procedure Law, N.J.S.A. 54:48-1 to 54-6 (SUTPL), confers on the Director broad authority to examine any return or report filed, conduct an audit of such return or report, impose a tax assessment for any tax deficiency determined thereon, and to examine all books, records, accounts, and documents of a taxpayer.  N.J.S.A. 54:49-6a provides, in part, that:

> [a]fter a return or report is filed under the provisions of any State tax law, the director shall cause the same to be examined and may make such further audit or investigation as the director may deem necessary, and if therefrom the director shall determine that there is a deficiency with respect to the payment of any tax due . . . , the director shall assess the additional taxes, penalties . . . , and interest . . . from such taxpayer . . . , from the date the tax was originally due until the date of actual payment, give notice of such assessment to the taxpayer, and make demand upon the taxpayer for payment.
>
> [N.J.S.A. 54:49-6a.]

Moreover, in administering the SUTPL, our Legislature authorized the Director to:

> make or cause to be made by any employee of the Division of Taxation . . . , an examination or investigation of the place of business, . . . the tangible personal property and the books, records, papers, vouchers, accounts and documents of any taxpayer.
>
> [N.J.S.A. 54:50-2.]

The Legislature further obligated taxpayers to produce for the Director, "all of the of the books, records, papers, vouchers, accounts and documents of the taxpayer and facilitate any such examination or investigation so far as it may be in his or their power so to do."  Ibid.

To effectuate the goals of the SUTPL, our Legislature enabled the Director to "promulgate regulations and take other necessary or useful measures for the purpose of efficiently administering this act, securing the largest possible recoveries for the State, ensuring the integrity of the collection program and assuring fairness to taxpayers."  N.J.S.A. 54:49-12.5; see also N.J.S.A. 54:50-1 (authorizing the Director to "make and enforce such rules and regulations as he may deem

11

necessary").

2. <u>Sales and Use Tax Act</u>

The SUT imposes a tax on the receipts from every sale of tangible personal property and certain enumerated services in New Jersey, unless otherwise specifically exempted. N.J.S.A. 54:32B-3. All sales transactions are deemed taxable under the SUT, unless the non-taxable or tax-exempt status of any transaction is established by the person required to collect the tax or the customer. N.J.S.A. 54:32B-12(b). Thus, a presumption exists under the SUT that a sale is taxable unless the party required to collect the tax can affirmatively demonstrate otherwise. <u>Newman v. Dir., Div. of Tax'n</u>, 14 N.J. Tax 313, 318 (Tax 1994).

The SUT provides that "any person required to collect tax . . . keep detailed records of all receipts . . . charged or accrued, including those claimed to be nontaxable, and also of the nature, type, value and amount of all purchases, sales, services rendered . . . and to furnish such information upon request of the director." N.J.S.A. 54:32B-24(5). The SUT further directs every person required to collect SUT to retain records "of every purchase . . . sale or . . . charge . . . and of all amounts paid, charged or due thereon" for a period of four years, including "each sales slip, invoice receipt, statement or memorandum . . . [and to] make available for inspection and examination at any time upon demand by the director. . . ." N.J.S.A. 54:32B-16.

The SUT further authorizes the Director to "make adopt and amend rules and regulations appropriate to the carrying out of this act and the purposes thereof." N.J.S.A. 54:32B-24. In furtherance thereof, the Director has promulgated regulations that similarly impose on sellers the obligation to maintain for inspection, "[a] true copy of all sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks . . . and records of every purchase . . . for a period of four years from the . . . filing of sales tax returns to which such records pertain." N.J.A.C. 18:24-2.3(a).

12

Moreover, when only "summary records" are being maintained, the vendor must nonetheless retain "sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks for a period of four years from the last date of the most recent quarterly period for the filing of sales tax returns. . . ." N.J.A.C. 18:24-2.4(a). Additionally, when a seller has not collected tax on a sale "due to the acceptance of a . . . resale or exemption certificate," the seller must retain "individual sales slips, invoices, receipts, statements, memoranda of price, cash register tapes, or guest checks recording such sales . . . for a period of not less than four years from the last date of the quarterly period for the filing of sales tax returns. . . ." N.J.A.C. 18:24-2.5.

However, when a vendor fails to maintain the records outlined above, it is within the Director's discretion to deem the vendor's records "insufficient" and to compute the correct tax due from any available information. Yilmaz, Inc. v. Dir., Div. of Tax'n, 22 N.J. Tax 204, 212 (Tax 2005), aff'd, 390 N.J. Super. 435 (App. Div. 2007). This authority, and the standard by which the sufficiency of the records is measured, is reflected in the regulations as follows:

> (a) The records of a vendor may be deemed incorrect or insufficient if:
>
> 1. An evaluation of the accounting system discloses that the system does not provide adequate internal control procedures which assure the accuracy and completeness of the transactions recorded in the books and records.
> 2. The records are not maintained in accordance with the general outline of this chapter.
>
> [N.J.A.C. 18:24-2.15(a).]

Thus, under the SUT, when a taxpayer fails to retain the requisite business records, or the records maintained do not exhibit adequate internal controls, the Director may deem those records "insufficient." Thus, authorizing the Director to compute the tax due from "such information as may be available." N.J.S.A. 54:32B-19; see also Yilmaz, Inc., 390 N.J. Super. at 441; TAS Lakewood v. Dir., Div. of Tax'n, 19 N.J. Tax 131 (Tax 2000); Saulwil, Inc. v. Dir., Div. of Tax'n,

13

31 N.J. Tax 433 (Tax 2020). Similarly, the SUT's regulatory scheme provides that:

> [i]f the records of a seller are determined to be incorrect or insufficient, the return(s) filed on the basis of the information obtained from such records may be deemed to be incorrect or insufficient and the Director may determine the amount of tax due to the State by using any information available, whether obtained from the seller or from any other source.
>
> [N.J.A.C. 18:24-2.15(b).]

Here, plaintiff concedes that "some records were incomplete or unavailable" and "certain records may not have been produced in complete form." However, plaintiff argues that the auditor's finding that the business records were insufficient is not supported. Plaintiff contends that it furnished "bank statements and deposit records, vendor invoices and purchase information, inventory and costs of goods data, and payroll information" which were "sufficient [for it] to reconstruct [p]laintiff's financial activity. . . ." In support of this position, plaintiff offers a "reconstruction of its [available] books and records" that attempts to recreate its gross sales and tax liabilities during the periods at issue. Notably, the reconstruction acknowledges that plaintiff owes an "Additional Tax" or SUT liability of at least $11,748 for the audit period. However, other than the limited documentation identified above, the plaintiff has submitted no independent corroborative evidence of its actual sales and corresponding SUT liabilities.

Moreover, in response to the Director's motion, plaintiff submits as an exhibit, a purported "expert analysis" or "expert report" that is based on the unidentified author's "review of the documentation provided to us." The court's review of this analysis reveals that it is undated, does not reflect the name of the individual or firm that prepared the report, does not bear the signature of the report's author, does not reflect the education, experience, or qualifications of the report's author, and does not identify in any detail the documentation that was produced and reviewed in generating the report. Thus, the court affords no weight to the conclusions reached therein.

However, the court finds it important to highlight certain statements contained in the

14

analysis. The analysis states that its author only "perform[ed] an independent review of the documentation provided to us" and did not "perform and audit, review or compilation procedures, and do[es] not provide any assurance on any of the documentation provided." Moreover, the report states that the author "attempted to recreate the actual books and records of the entity from the bank statements and records of the taxpayer," thus expressly acknowledging that plaintiff failed to maintain the books and records statutorily required, resulting in the report's author having to "attempt[] to recreate" them.

The report's author further admits that because the plaintiff "utilized a cash register for the sales, a cash register for lottery transactions, and a manual system to record purchases that were completed in cash from the drawer . . . the purchases were at least underreported by the amount of cash purchases made from the drawer and gross sales were underreported by the amount of cash paid out and not deposited." (emphasis added). Thus, the report's author admits that "the general ledgers and workpapers provided by the tax preparer are insufficient [for] the audit."

Based on the court's review of the motion record, the court finds, as the Director's auditor did, that plaintiff failed to maintain and/or preserve the business records required under the statutory and regulatory schemes. See N.J.S.A. 54:32B-16; N.J.S.A. 54:32B-24(5); N.J.A.C. 18:24-2.3(a); N.J.A.C. 18:24-2.3(b); N.J.A.C. 18:24-2.15(a). The motion record before the court confirms that plaintiff failed to produce: (i) the General Ledger for 2014; (ii) Profit and Loss Statements and/or Trial Balances for 2011, 2012, 2013, and 2015; (iii) bank statements for 2011, 2012, and 2013 with images of cancelled checks, and 2014 images of cancelled checks; (iv) W-2s and N.J. W-3s with payroll summaries for 2013, 2014, and 2015; (v) a depreciation schedule for January 2012 through December 2015; (vi) register tape sales for October 2015 through December 2015; (vii) the sales journal for January 2012 through December 2015; (viii) current purchase vendor invoices for November through December 2015; and (ix) 1099-Ks for all merchandise

15

credit card accounts. Therefore, the court agrees with the Director's findings that plaintiff's business and financial records are insufficient. See Yilmaz, Inc., 390 N.J. Super. at 441; N.J.A.C. 18:24-2.15(a).

When a taxpayer has failed to file a required return or report or has filed a return with "incorrect or insufficient" information, the Director is authorized to determine the amount of tax due from such information which may be available, including estimating the tax "on the basis of external indices. . . ." N.J.S.A. 54:32B-19; see also Kramer v. Dir., Div. of Tax'n, 24 N.J. Tax 105, 113 (Tax 2008). Moreover, if the Director's review of a vendor's business records reveals a lack of "adequate internal control procedures which assure the accuracy and completeness of the transactions recorded," the Director is authorized to "determine the amount of tax due . . . by using any information available, whether from the vendor's place of business or from any other source." N.J.A.C. 18:24-2.15. Importantly, the Director's review is not limited or confined to the business records made available by the taxpayer during an audit rather, the Director afforded "broad authority to determine the tax from any available information. . . ." Yilmaz, Inc., 390 N.J. Super. at 441.

### 3. Presumption of Correctness

The Director's "expertise in the highly specialized and technical area of taxation. . . is entitled to great respect by the courts," and its "interpretation of the operative law is entitled to prevail, so long as it is not plainly unreasonable." Quest Diagnostics, Inc. v. Dir., Div. of Tax'n, 387 N.J. Super. 104 (App. Div. 2006) (citing Metromedia, Inc. v. Dir., Div. of Tax'n, 97 N.J. 313, 327 (1984)); see also Aetna Burglar & Fire Alarm Co. v. Dir., Div. of Tax'n, 16 N.J. Tax 584 (Tax 1997). Thus, the Director's assessment of "tax is presumptively correct" and the burden rests with the taxpayer to rebut that presumption of correctness. Quest Diagnostics, Inc., 21 N.J. Tax at 490; see also Atlantic City Transport. Co. v. Dir., Div. of Tax'n, 12 N.J. 130, 146 (1953).

16

When a taxpayer seeks to challenge the Director's audit practices or conclusion that a taxpayer maintained inadequate books and records, the taxpayer must present the court with "cogent evidence" to rebut the presumption of correctness. That evidence must be "definite, positive and certain in quality and quantity to overcome the presumption." Yilmaz, Inc. v. Dir., Div. of Tax'n, 22 N.J. Tax 204, 236 (Tax 2005), aff'd, 390 N.J. Super. 435 (App. Div. 2007) (internal citations omitted). The evidence must "focus on the reasonableness of the underlying data used by the Director and the reasonableness of the methodology used." Ibid.

Here, plaintiff argues that the court should set aside the Director's audit because the methodology was "flawed," is unreasonable, and produced an aberrant result. Plaintiff maintains that the Director's estimated assessments were inaccurate and unreliable because it "attempted to calculate . . . sales based on gross bank deposits, [however,] [t]his approach is flawed because bank deposits include non-income items, such as cash deposits to the ATM . . . which results in an overstatement of gross sales."

The plaintiff further contends that the Director "failed to account for [p]laintiff's cash-based operational structure, including the use of a cash drawer maintained at a fixed balance." In plaintiff's estimation, bank "deposits alone cannot accurately reflect sales without reconstruction." Moreover, plaintiff argues that summary judgment should be denied because "[t]hrough cross-examination, [p]laintiff can probe the auditor's assumptions, challenge the exclusion of key records, and expose inconsistencies or gaps in the reconstruction process."

However, when a taxpayer fails to maintain the required business and financial records, the Director is statutorily authorized to make estimated assessments based upon all available sources of information. N.J.S.A. 54:32B-19. Moreover, the presumption of correctness will stand even if the audit practice is "imperfect." Yilmaz, Inc., 390 N.J. Super. at 437. In the absence of independent and credible "evidence that the amount of the assessment is far wide of the mark, the

taxpayer cannot overcome the presumption simply by attacking the Director's methodology." Kramer, 24 N.J. Tax at 106. Naked assertions made by a taxpayer without any supporting records or documentation are insufficient to overcome the presumption of correctness which attaches to the Director's assessment. TAS Lakewood, Inc., 19 N.J. Tax at 140. The presumption of correctness is only overcome when the taxpayer presents independent, credible, and cogent evidence establishing that the methodology employed by the Director produced an "aberrant" result. Id. at 442.

The court's review of the motion record discloses that the auditor attempted to reconcile plaintiff's gross sales for tax years 2014 through 2015 using ST-50's, Corporate Business Tax filings, and bank deposits. However, upon reviewing that information, the auditor found "unverified discrepancies" and therefore, did not accept plaintiff's reported gross receipts. Next, the auditor attempted to reconcile plaintiff's COGS for the 2014 tax year by reviewing plaintiff's 2014 purchase invoices, available third-party information, and the purchases reported on plaintiff's 2014 CBT return. However, upon completing that reconciliation, the auditor found that plaintiff's "reported purchases for 2014 were underreported," thus the auditor rejected plaintiff's purchases as filed. Therefore, the auditor imposed estimated SUT, CBT and GIT-ER assessments, which the court views as appropriate. See Yilmaz, Inc., 390 N.J. Super. at 441.

As articulated by our Supreme Court in Brill, "a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that creates a 'genuine issue as to any material fact challenged.'" 142 N.J. at 529 (quoting R. 4:46-2(c)). The issues presented under the motion in this matter concerns the "selection of data and methods employed to analyze that data" and does not implicate "questions of state of mind, or intent or credibility," thus, application of summary judgment is appropriate. Coliseum Pizzeria, Inc. v. Dir., Div. of Tax'n, 24 N.J. Tax 369, 377 (Tax 2008) (internal citations omitted).

18

Plaintiff has not tendered the court with any independent competent evidence that the data, formula, or methodology applied by the Director produced aberrant, arbitrary, or capricious assessments, thereby raising genuine issues as to the soundness and accuracy of the audit. Plaintiff has offered only unsupported claims and unsubstantiated allegations without any reliable independent evidence. A trial in this matter would seemingly amount to little more than the court's review of Director's audit procedures and final assessment on the basis of plaintiff's unsubstantiated challenges.

Therefore, based upon the principles established in Yilmaz and the standards articulated by our Supreme Court under Brill, the plaintiff has failed to demonstrate the existence of a genuine dispute of a material issue of fact necessitating a trial. See 390 N.J. Super. at 441; 142 N.J. at 536. Accordingly, the Director's motion for summary judgment is granted.

**III.    Conclusion**

Accordingly, for the reasons stated above, the court grants the Director's motion for summary judgment.

The court will enter a Final Order consistent with this opinion.